**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**November 8, 2011**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

RAY BROWN,

        Plaintiff - Appellee,

v.

DANIEL MONTOYA, in his individual
capacity; JOE R. WILLIAMS, in his
individual capacity and official capacity
as Secretary of Corrections,

        Defendants - Appellants,

and

LIZ AGUILAR, in her individual
capacity; MANUEL GONZALES, III, in
his individual capacity and official
capacity as Bernalillo County Sheriff;
JOHN DOES 1 THROUGH 50,

        Defendants.

No. 10-2269

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**
**(D.C. NO. 1:10-CV-00081-BB-ACT)**

Alfred A. Park (Lawrence M. Marcus, with him on the briefs), Park & Anderson, L.L.C.,
Albuquerque, New Mexico, appearing for Appellants.

Paul J. Kennedy (Arne R. Leonard, with him on the brief), Kennedy & Han, P.C., Albuquerque, New Mexico, appearing for Appellee.

Before **KELLY, SILER**[†] **,** and **MATHESON,** Circuit Judges.

**MATHESON**, Circuit Judge.

This appeal comes to us from the district court's denial of the defendants-appellants' motion to dismiss a complaint alleging 42 U.S.C. § 1983 claims against them for violation of the plaintiff-appellee's rights under the Fourteenth Amendment to substantive due process, procedural due process, and equal protection. The appellants argued, among other things, that their qualified immunity from suit required dismissal. Our review is limited to that issue.

Ray Brown pled guilty to two counts of false imprisonment in New Mexico state court. When he was released from custody, his probation officer, Daniel Montoya, directed him to register as a sex offender and placed him in the sex offender probation unit. Officer Montoya alleged that he acted on information that the victim in Mr. Brown's false imprisonment case was a minor, and, under Officer Montoya's understanding of the law, Mr. Brown was properly classified as a sex offender. Mr. Brown sought and won in state court an order removing his name from the sex offender registry and removing him from the sex offender probation unit.

---

[†] The Honorable Eugene E. Siler, Jr., Senior United States Circuit Judge, United States Court of Appeals for the Sixth Circuit, sitting by designation.

Mr. Brown then filed suit under 42 U.S.C. § 1983 in federal district court. His Complaint included damages claims against Officer Montoya and New Mexico Secretary of Corrections Joe Williams in their individual capacities.[1] Mr. Brown alleged he was wrongly directed to register as a sex offender and wrongly placed in the sex offender probation unit. Officer Montoya and Secretary Williams filed an answer containing an affirmative defense of qualified immunity and moved to dismiss. They also contended they were protected by statutory immunity. Secretary Williams further argued that he was protected by absolute legislative immunity. The district court denied the motion, and Officer Montoya and Secretary Williams have appealed.

We lack jurisdiction over the statutory immunity issue. We do have jurisdiction to review the district court's rulings on Officer Montoya's and Secretary Williams's motions to dismiss based on their qualified immunity defenses and Secretary Williams's absolute legislative immunity defense.

As to Mr. Brown's claims against Secretary Williams in his individual capacity, we reverse the district court's denial of the motion to dismiss on qualified immunity grounds. We need not reach Secretary Williams's claim of absolute legislative immunity.

As to Mr. Brown's procedural due process claim against Officer Montoya, we affirm the district court's denial of the motion to dismiss on qualified immunity grounds. We reverse the denial of the motion to dismiss on the substantive due process and equal protection claims.

---

[1] Mr. Brown also sued Secretary Williams in his official capacity and sued other officials. He also brought claims under the New Mexico state constitution. These claims are not raised on appeal.

3

# I. BACKGROUND

## A. *Relevant New Mexico Statutes and Policy*

We start with an overview of pertinent New Mexico statutes and the New Mexico Department of Corrections Policy.

Mr. Brown pled guilty to New Mexico's false imprisonment offense: "False imprisonment consists of intentionally confining or restraining another person without his consent and with knowledge that he has no lawful authority to do so." N.M. Stat. Ann. § 30-4-3. New Mexico's criminal statutes do not include a specific offense for false imprisonment of a minor.

Two New Mexico postconviction statutes bear on Mr. Brown's § 1983 claim: the Probation Statute, N.M. Stat. Ann. § 31-20-5.2, and the Registry Statute, N.M. Stat. Ann. § 29-11A.

The Probation Statute provides the terms and conditions of probation for sex offenders. *See id.* § 31-20-5.2. Its definition of sex offender does not refer to false imprisonment. *See id.* § 31-20-5.2(F). The Probation Statute requires that "[p]rior to placing a sex offender on probation, the district court shall conduct a hearing to determine the terms and conditions of supervised probation for the sex offender." *Id.* § 31-20-5.2(A).

The Registry Statute establishes New Mexico's sex offender registry. *See id.* § 29-11A-2. Its definition of sex offender includes those who have pled guilty to "false imprisonment, as provided in [N.M. Stat. Ann. § 30-4-3], when the victim is less than eighteen years of age and the offender is not a parent of the victim." *See id.* § 29-11A-

4

3(E)(7). The Registry Statute also states: "A sex offender who willfully or knowingly fails to comply with the registration requirements set forth in this section is guilty of a fourth degree felony." *Id.* § 29-11A-4(N).

The New Mexico Department of Corrections implements both the Probation Statute and the Registry Statute through Department Policy No. CD-053200 ("Policy"), titled Probation-Parole Division Sex Offender Registration, Tracking, and Supervision. The Policy defines a sex offender as "[a]ny person convicted of a sex offense on or after July 1, 1995" and defines "sex offense" to include "[f]alse imprisonment when the victim is under 18 years of age and the offender is not the parent of the victim in the fourth degree." Policy at 2.

The Policy enumerates requirements that apply to sex offenders on probation. Sex offenders must register with the local sheriff within ten days of their release from prison. *Id.* at 3. The Policy states that sex offenders' "travel, employment and residency are subject to restrictions that may be more stringent than those normally imposed on other types of offenders." *Id.* at 4.

**B. *Mr. Brown's State Prosecution, Sentencing, and Probation***

On March 29, 2007, Ray Brown pled guilty in New Mexico state court to several criminal charges arising from an armed robbery, including two counts of false imprisonment in violation of N.M. Stat. Ann. § 30-4-3. On April 24, 2007, the state court sentenced him to four years of incarceration to be followed by five years in New Mexico's Intensive Supervised Probation ("ISP") program. Mr. Brown alleged that, at

5

his sentencing hearing, the court did not suggest that he should be placed in the sex offender probation unit or that he needed to register as a sex offender.

In early 2009, Mr. Brown was released from incarceration and placed on probation.[2]  He alleged that, when he was released, his probation officer, Daniel Montoya, directed him to register with New Mexico's sex offender registry, *see* Complaint, para. 33, and placed him in the sex offender probation unit, *see id.*, paras. 4, 23, 26.[3]  Mr. Brown alleged that Officer Montoya claimed he had information indicating that Mr. Brown's victim was a minor, but did not state how he obtained this information.

Mr. Brown alleged that neither the indictment that charged him nor the plea agreement he signed mentioned his victim's age.  Mr. Brown alleged that he did not even know his victim's age.

On May 26, 2009, Mr. Brown moved in the court that sentenced him to modify his probation conditions by removing him from the sex offender probation unit.  At a hearing on June 24, 2009, the state did not oppose Mr. Brown's motion, saying it "could find no link between the crimes for which [Mr. Brown] was being charged and him being placed in a sex offender unit."  ROA at 15.  Officer Montoya attended the hearing and said that

---

[2] When exactly Mr. Brown was released from incarceration and placed on probation is not clear from the Complaint.  *See* Complaint, para. 33.  At oral argument, counsel for Mr. Brown stated that these events occurred in March 2009.  Reading the Complaint as a whole, the Complaint suggests that Mr. Brown was released from incarceration and placed on probation in early 2009.

[3] Although the Complaint generally states that the "Defendants" placed Mr. Brown in the sex offender probation unit, *see* Complaint, para. 23, it also indicates that Officer Montoya placed Mr. Brown in the sex offender probation unit because he explained and defended that decision in court and is the only probation officer named in the Complaint. *See id.* paras. 4, 26.

6

he placed Mr. Brown in the sex offender probation unit because the offense involved a minor. The court asked the prosecutor if the case involved "any sexual offenses against a juvenile." *Id.* at 16. He replied: "None whatsoever. None within the police reports. None within the indictment." *Id.*

The court granted Mr. Brown's motion and stated that he should not have been placed in the sex offender probation unit and should not have been directed to register as a sex offender. On July 21, 2009, the court issued a written ruling ordering that Mr. Brown's name be removed from the sex offender registry and that Mr. Brown be removed from the sex offender probation unit.

## C. *Mr. Brown's Section 1983 Suit*

On February 1, 2010, Mr. Brown filed his Complaint under 42 U.S.C. § 1983 in federal district court in New Mexico against Officer Montoya in his individual capacity and Secretary Williams in both his individual and official capacities. Mr. Brown also named as defendants Bernalillo County Sheriff Manuel Gonzales, III, Bernalillo County Deputy Sheriff Liz Aguilar, and fifty unnamed state and local officials. Mr. Brown alleged that the defendants, acting under color of law, violated his constitutional rights by wrongly directing him to register as a sex offender and placing him in the sex offender probation unit.

Mr. Brown alleged deprivation of his constitutional rights to substantive due process, procedural due process, and equal protection. He sought damages and injunctive relief.

7

Officer Montoya and Secretary Williams filed a joint answer. They raised, among other defenses, qualified immunity, and they alleged that they acted in good faith.

Officer Montoya and Secretary Williams also filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).[4] Secretary Williams asserted that Mr. Brown had not alleged facts indicating that Secretary Williams personally participated in any constitutional rights violation. Officer Montoya and Secretary Williams claimed they were protected by qualified immunity and—because they acted in good faith—they were protected by statutory immunity under the Wetterling Act, 42 U.S.C. § 14071.

In response to the motion, Mr. Brown argued that Secretary Williams was liable as a supervisor for promulgating the Policy that led to his classification as a sex offender and suggested that the district court could reach this conclusion by taking judicial notice of the Policy. In a reply, Secretary Williams argued he was protected by absolute legislative immunity.

On November 16, 2010, the district court issued a memorandum opinion and order denying Officer Montoya's and Secretary Williams's motion to dismiss. As to Secretary Williams, the court held that the Complaint alleged sufficient facts to find that he was liable as a supervisor and rejected his legislative immunity defense.

---

[4] Because qualified immunity is an affirmative defense that Officer Montoya and Secretary Williams raised in their answer, their motion is more accurately described as a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) rather than a motion for failure to state a claim under Rule 12(b)(6). "We use the same standard when evaluating 12(b)(6) and 12(c) motions." *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 n.2 (10th Cir. 2002).

The court also rejected Officer Montoya's and Secretary Williams's qualified immunity defense. It concluded the Complaint had alleged sufficient facts that Officer Montoya and Secretary Williams had violated Mr. Brown's clearly established substantive due process, procedural due process, and equal protection rights by wrongly classifying him as a sex offender when he had not committed a sex offense.

The court also found no reason to dismiss on statutory immunity grounds under the Wetterling Act, which protects government officials who implement sex offender registries in good faith, because the Complaint contained sufficient allegations of bad faith.

After the district court denied the motion to dismiss, Officer Montoya and Secretary Williams filed a timely interlocutory appeal for review of the court's denial of their motion to dismiss Mr. Brown's claims against them in their individual capacities.[5]

## II. DISCUSSION

Section one of the Fourteenth Amendment provides in relevant part: "nor shall any State deprive any person of life, liberty, or property without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." Mr. Brown claims that Officer Montoya and Secretary Williams violated his rights under the Due Process Clause to procedural and substantive due process and his rights under the Equal Protection Clause. We conclude that the individual capacity claims against Secretary

---

[5] *See* Aplt. Opening Br. at 4 (stating that the appeal "challeng[es] the denial as it relates to Plaintiff-Appellees [sic] damages claim"). Section 1983 plaintiffs may sue individual-capacity defendants only for money damages and official-capacity defendants only for injunctive relief. *See Hafer v. Melo*, 502 U.S. 21, 30, 27 (1991).

9

Williams should have been dismissed based on qualified immunity. We further conclude that the substantive due process and equal protection claims against Officer Montoya should have been dismissed, but not the procedural due process claim.

## A. *Jurisdiction*

We have limited jurisdiction in an interlocutory appeal.[6] In this case we have jurisdiction over the qualified immunity and absolute legislative immunity issues, but we lack jurisdiction over the statutory immunity issue.

Under 28 U.S.C § 1291, we "have jurisdiction of appeals from all final decisions of the district courts" of this Circuit—the final judgment rule. The Supreme Court has clarified, however, that "a decision 'final' within the meaning of § 1291 does not necessarily mean the last order possible to be made in a case." *Mitchell v. Forsyth*, 472 U.S. 511, 524 (1985) (quotation omitted).

Instead, a district court's ruling may be appealed if it "fall[s] in that small class which finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated." *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546 (1949).

---

[6] That Mr. Brown's claim against Secretary Williams in his official capacity remains pending below does not prevent us from reviewing Secretary Williams's qualified immunity defense to the claim against him in his individual capacity. We have held that "a pending claim for injunctive relief does not bar our jurisdiction over an interlocutory appeal of a denial of a defense of qualified immunity to a damages claim." *DeVargas v. Mason & Hanger-Silas Mason Co., Inc.*, 844 F.2d 714, 718 (10th Cir. 1988).

10

We must determine which of the issues raised by Officer Montoya and Secretary Williams fit into the small class of claims that we may review in an interlocutory appeal under *Cohen*'s "collateral order" doctrine. *See Mitchell*, 472 U.S. at 524-25.

### 1. *Qualified Immunity*

Both Officer Montoya and Secretary Williams appeal the district court's denial of their motion to dismiss on qualified immunity. The Supreme Court has explained that qualified immunity "is an *immunity from suit* rather than a mere defense to liability . . . it is effectively lost if a case is erroneously permitted to go to trial." *Id.* at 526. Therefore, "a district court's denial of a claim of qualified immunity, to the extent that it turns on an issue of law, is an appealable 'final decision' within the meaning of 28 U.S.C. § 1291." *Id.* at 530; *see also Peterson v. Jensen*, 371 F.3d 1199, 1201-02 (10th Cir. 2004) (reviewing on interlocutory appeal a denial of a motion to dismiss on qualified immunity grounds). Whether Mr. Brown has alleged a violation of his clearly established constitutional rights to overcome Officer Montoya's and Secretary Williams's defense of qualified immunity is an issue of law reviewable on interlocutory appeal.

### 2. *Absolute Legislative Immunity*

Secretary Williams also appeals the district court's denial of his motion to dismiss for absolute legislative immunity. In *Sable v. Myers*, 563 F.3d 1120, 1121 (10th Cir. 2009) (citing to *Mitchell*, 472 U.S. at 525), we stated that absolute legislative immunity is reviewable on an interlocutory appeal. Although we have jurisdiction over this issue, we do not reach it because we reverse, on qualified immunity grounds, the district court's

11

denial of Secretary Williams's motion to dismiss Mr. Brown's individual capacity claim against him.

### 3. *Statutory Immunity*

Officer Montoya and Secretary Williams argue that they have statutory immunity under the Wetterling Act. We lack jurisdiction to review this issue.

The Wetterling Act states: "Law enforcement agencies, employees of law enforcement agencies and independent contractors acting at the direction of such agencies, and State officials shall be immune from liability for good faith conduct under this section." 42 U.S.C. § 14071(f).[7] In *Decker v. IHC Hospitals, Inc.*, 982 F.2d 433 (10th Cir. 1992), we held that we lacked interlocutory jurisdiction over statutory immunity from liability. *Id.* at 437 (holding that, because the statutes on which defendants relied "provide[d] 'an immunity from suit rather than a mere defense to liability,' . . . [the defendants'] asserted right to be free from liability can be effectively vindicated in a future appeal of a final order." (quoting *Mitchell*, 472 U.S. at 526)).

\* \* \*

Because we lack jurisdiction over the statutory immunity issue and need not reach the absolute legislative immunity issue, our review is limited to whether Mr. Brown can overcome Officer Montoya's and Secretary Williams's defense of qualified immunity.

---

[7] The Wetterling Act was repealed by the Adam Walsh Child Protection and Safety Act of 2006, Pub. L. No. 109-248, § 129(a), 120 Stat. 587, but the Walsh Act retains a similar immunity provision. *See* 42 U.S.C. § 16929 ("The Federal Government, jurisdictions, political subdivisions of jurisdictions, and their agencies, officers, employees, and agents shall be immune from liability for good faith conduct under this subchapter.").

**B.** *Standard of Review*

"We review the district court's denial of a motion to dismiss based on qualified immunity de novo." *Peterson*, 371 F.3d at 1202. In reviewing a motion to dismiss, "all well-pleaded factual allegations in the . . . complaint are accepted as true and viewed in the light most favorable to the nonmoving party." *Moore v. Guthrie*, 438 F.3d 1036, 1039 (10th Cir. 2006) (quotation omitted).

Because we are reviewing the qualified immunity issue in the context of a motion to dismiss, we bear in mind the standard governing motions to dismiss, which the Supreme Court recently addressed in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

In *Twombly*, the Court held that, to survive a motion to dismiss, plaintiffs' pleadings must "nudge[] their claims across the line from conceivable to plausible." 550 U.S. at 570. In *Iqbal*, the Court applied *Twombly* to a motion to dismiss based on qualified immunity in a *Bivens* action. *Iqbal* formulated the test in this way:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

129 S. Ct. at 1949 (quotations and citations omitted).

We recently applied *Twombly* and *Iqbal* in *Kansas Penn Gaming, LLC v. Collins*, — F.3d —, 2011 WL 3849751 (10th Cir. Sept. 1, 2011). We noted that *Iqbal* reinforced

13

our earlier statement that in a § 1983 action it is "particularly important" that "the complaint make clear exactly *who* is alleged to have done *what* to *whom*, to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations against the state." *Kansas Penn*, 2011 WL 32849751 at *3 (quoting *Robbins v. Okla. Ex rel. Dep't of Human Servs.*, 519 F.3d 1242, 1250 (10th Cir. 2008)).

## C. *Background on Section 1983 and Qualified Immunity*

Title 42 U.S.C. § 1983 provides in part that "[e]very person who, under color of any statute . . . subjects . . . any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." We first explain the difference between a § 1983 defendant's personal liability and supervisory liability. We then describe the test for assessing whether a plaintiff has overcome a defendant's claim of qualified immunity.

### 1. *Personal Liability and Supervisory Liability*

A § 1983 defendant sued in an individual capacity may be subject to personal liability and/or supervisory liability.[8] Personal liability "under § 1983 must be based on personal involvement in the alleged constitutional violation." *Foote v. Spiegel*, 118 F.3d 1416, 1423 (10th Cir. 1997).

---

[8] In this appeal we review only Mr. Brown's claim against Officer Montoya and Secretary Williams in their individual capacities. Individual capacity "suits seek to impose personal liability upon a government official for actions he takes under color of state law." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985). In contrast, "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." *Will v. Mich. Dept. of State Police*, 491 U.S. 58, 71 (1989).

Supervisory liability "allows a plaintiff to impose liability upon a defendant-supervisor who creates, promulgates, [or] implements . . . a policy . . . which subjects, or causes to be subjected that plaintiff to the deprivation of any rights . . . secured by the Constitution." *Dodds v. Richardson*, 614 F.3d 1185, 1199 (10th Cir. 2010), *cert. denied*, 131 S. Ct. 2150 (2011) (quotation omitted).

Section 1983 does not authorize liability under a theory of respondeat superior. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). Instead, to establish supervisory liability, a plaintiff must show that "(1) the defendant promulgated, created, implemented or possessed responsibility for the continued operation of a policy that (2) caused the complained of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional deprivation." *Dodds*, 614 F.3d at 1199.

### 2. *Qualified Immunity*

Government defendants sued under § 1983 in their individual capacities have qualified immunity: "government officials are not subject to damages liability for the performance of their discretionary functions when their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Buckley v. Fitzsimmons*, 509 U.S. 259, 268 (1993) (quotation omitted).

We employ a two-part test to analyze a qualified immunity defense. "In resolving a motion to dismiss based on qualified immunity, a court must consider whether the facts that a plaintiff has alleged make out a violation of a constitutional right, and whether the right at issue was clearly established at the time of defendant's alleged misconduct."

15

*Leverington v. City of Colorado Springs*, 643 F.3d 719, 732 (10th Cir. 2011) (quotations and ellipses omitted).

In *Pearson v. Callahan*, 555 U.S. 223 (2009), the Supreme Court said that "judges of the district courts and the courts of appeals are in the best position to determine the order of decisionmaking that will best facilitate the fair and efficient disposition of each case." *Id.* at 242. We therefore have discretion to "decid[e] which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.* at 236.

Whether a right is "clearly established" is an objective test: "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Stearns v. Clarkson*, 615 F.3d 1278, 1282 (10th Cir. 2010) (quotation omitted). "In order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Id.* (quotation omitted).

**D.** *Secretary Williams*

We turn now to the merits of Secretary Williams's appeal. To overcome Secretary Williams's defense of qualified immunity, Mr. Brown must allege facts showing that Secretary Williams, either through his personal participation in Mr. Brown's treatment or the promulgation of a policy, violated a clearly established constitutional right. He has not done so in his Complaint.

16

Personal liability under § 1983 must be based on Secretary Williams's personal involvement, and supervisory liability must be based on his Policy. The Complaint alleges neither.

Indeed, the Complaint's only explicit reference to Secretary Williams is the following:

> At all relevant times herein, Defendant Joe R. Williams was acting under color of state law as the Secretary of Corrections for the State of New Mexico, charged with notifying sex offenders of their duty to register and administering sex-offender registration and probation programs under state law. Defendant Williams is sued in his individual capacity with respect to Plaintiff's claims for damages and in his official capacity with respect to Plaintiff's claims for prospective declaratory and injunctive relief.

Complaint, para. 7.

The Complaint refers to actions of "Defendants," but that is not sufficient to show how Secretary Williams "might be individually liable for deprivations of [Mr. Brown's] constitutional rights." *See Robbins*, 519 F.3d at 1250. It is not enough for the Complaint to lump the four named defendants and presumably the 1-50 John Does into the collective term "Defendants" and allege that they directed Mr. Brown to register and serve probation as a sex offender. *See, e.g.*, Complaint, para. 23. The need for individualized allegations is especially important where, as here, "each of the defendants had different powers and duties," but the Complaint fails "to identify specific actions taken by particular defendants that could form the basis" of a constitutional violation. *See Tonkovich v. Kansas Bd. of Regents*, 159 F.3d 504, 532 (10th Cir. 1998).

As we recently reiterated, "it is particularly important" in a § 1983 case brought against "a number of government actors sued in their individual capacity . . . that the

17

complaint make clear exactly who is alleged to have done what to whom . . . as distinguished from collective allegations." *See Kansas Penn*, 2011 WL 32849751 at *3 (quoting *Robbins*, 519 F.3d at 1249-50). Because the defendants here are "mistakenly grouped in a single allegation," the Complaint "fails to isolate the allegedly unconstitutional acts of" Secretary Williams.[9] *See id.* at 1250.

Mr. Brown's Complaint cannot be the basis for personal liability because it does not specifically allege how Secretary Williams acted in Mr. Brown's case or even that he knew about it. Although the Complaint alleges that Secretary Williams was "charged with notifying sex offenders of their duty to register," it does not specifically allege that Secretary Williams told Mr. Brown to register or directed anyone else to make Mr. Brown register. Instead, it alleges that Officer Montoya and Deputy Sherriff Aguilar directed Mr. Brown to register. *See* Complaint, para. 33.

Mr. Brown argues in his brief that Secretary Williams is liable as a supervisor because he signed the Policy on which Officer Montoya allegedly relied to classify Mr. Brown as a sex offender. *See* Aple. Br. at 40. But the allegations in Mr. Brown's Complaint do not meet the standard for supervisory liability. To establish supervisory liability, Mr. Brown would have to show that (1) Secretary Williams promulgated or was responsible for a policy that (2) caused the constitutional harm and (3) acted with the

---

[9] Although the Complaint's allegations regarding Officer Montoya also could have been clearer, Mr. Brown alleges that "Defendant Montoya wrongfully directed and required Plaintiff to register as a sex offender." Complaint, para. 33. The Complaint does not refer specifically to any action by Secretary Williams.

state of mind required to establish the alleged constitutional deprivation. *See Dodds*, 614 F.3d at 1199.

The Complaint fails on the first step because it does not even mention the Policy. Mr. Brown only attached the Policy to his memorandum in response to Secretary Williams's motion to dismiss and asked the district court to take judicial notice of the Policy.

> We have held that
>
> notwithstanding the usual rule that a court should consider no evidence beyond the pleadings on a Rule 12(b)(6) motion to dismiss, the district court may consider documents *referred to in the complaint* if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity.

*Alvarado v. KOB-TV, LLC*, 493 F.3d 1210, 1215 (10th Cir. 2007) (quotation omitted) (emphasis added); *see also Cnty. of Santa Fe, N.M. v. Pub. Serv. Co. of N.M.*, 311 F.3d 1031, 1045 (10th Cir. 2002) (considering a document outside the complaint in reviewing a motion to dismiss "because it is a document referred to in the complaint and it is a document that is central to the plaintiff's claim whose authenticity is not in dispute."). Because Mr. Brown's Complaint does not refer to the Policy, we do not consider it.

Without specifically alleging Secretary Williams's personal involvement or anything about the Policy, Mr. Brown has alleged no connection between Secretary Williams and any constitutional violation. He has thereby failed to overcome Secretary Williams's qualified immunity defense. We therefore reverse the district court's denial of the motion to dismiss Mr. Brown's individual capacity claims against Secretary Williams. Because our decision disposes of Mr. Brown's claims against Secretary

19

Williams in his individual capacity, we need not address whether Secretary Williams is protected by absolute legislative immunity.

**E.** *Officer Montoya*

We agree with the district court that Mr. Brown's Complaint alleges sufficient facts to overcome Officer Montoya's qualified immunity on the procedural due process claim. We cannot say the same about the substantive due process and equal protection claims. As to each claim, we are mindful of the two-step analysis for § 1983 qualified immunity, which calls on Mr. Brown to show (1) that Officer Montoya has violated a constitutional right, and (2) that the constitutional right was clearly established when it was violated. If Mr. Brown's Complaint fails on either of those two requirements on a given claim, that claim should be dismissed. We also bear in mind that "the factors necessary to establish a § 1983 violation depend upon the constitutional provision at issue, including the state of mind required to establish a violation of that provision." *Dodds*, 614 F.3d at 1204.

**1.** *Procedural Due Process*

We examine whether Mr. Brown has alleged a procedural due process right violation and then determine whether the law was clearly established at the time of the violation.

**a.** *Constitutional Right Violation*

Mr. Brown's procedural due process claim is that Officer Montoya mistakenly classified him as a sex offender—both by placing him in the sex offender probation unit

20

and directing him to register as a sex offender—without adequate process to determine that he actually was a sex offender.

### i. *Precedent*

"Procedural due process imposes constraints on governmental decisions which deprive individuals of liberty or property interests within the meaning of the Due Process Clause of the . . . Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976) (quotations omitted). "Due process is flexible and calls for such procedural protections as the particular situation demands." *Id.* at 333 (quotation and brackets omitted).

We have held that, "[t]o assess whether an individual was denied procedural due process, courts must engage in a two-step inquiry: (1) did the individual possess a protected interest such that the due process protections were applicable; and, if so, then (2) was the individual afforded an appropriate level of process." *Merrifield v. Bd. of Cnty. Comm'rs*, 654 F.3d 1073, 1078 (10th Cir. 2011).

### (a) *Due Process Interest*

First, as to a protected due process interest, Mr. Brown seeks to fit his case into decisions holding that a governmental defamation, coupled with an alteration in legal status, violates a liberty interest that triggers procedural due process protection. The leading Supreme Court case is *Paul v. Davis*, 424 U.S. 693 (1976). In *Paul*, the police erroneously placed the plaintiff's name and photograph on a flyer listing "Active Shoplifters." *See id.* at 695. The plaintiff brought a § 1983 action against the police, arguing that this conduct violated procedural due process. *Id*. at 696-97.

21

The *Paul* Court explained that "there exists a variety of interests which are difficult of definition but are nevertheless comprehended within the meaning of either 'liberty' or 'property' as meant in the Due Process Clause." *Id.* at 710. "These interests attain this constitutional status by virtue of the fact that they have been initially recognized and protected by state law, and we have repeatedly ruled that the procedural guarantees of the Fourteenth Amendment apply whenever the State seeks to remove or significantly alter that protected status." *Id.* at 710-11.

The Court held that stigma or defamatory harm to reputation in itself was insufficient to create a liberty interest. "[W]e do not think that such defamation, standing alone, deprive[s] . . . any 'liberty' protected by the procedural guarantees of the Fourteenth Amendment." *Id.* at 709. But it said that stigma plus an alteration in legal status would implicate a liberty interest. Examples of such an alteration in status include the state's taking away the right to operate a vehicle or revoking parole. *Id.* at 711. Since *Paul*, courts have referred to this standard as the "stigma plus" test. *See Gwinn v. Awmiller*, 354 F.3d 1211, 1216 (10th Cir. 2004).

The plaintiff in *Paul* failed the stigma plus test. The Court said that the plaintiff was complaining only about damage to his reputation and could not "assert denial of any right vouchsafed to him by the State and thereby protected under the Fourteenth Amendment." *Id.* at 712. The Court therefore held that the police officers' "defamatory publications, however seriously they may have harmed respondent's reputation, did not deprive him of any 'liberty' or 'property' interests protected by the Due Process Clause." *Id.*

22

We applied *Paul* to sex offender registries in *Gwinn*, 354 F.3d at 1216.  Kevin

Gwinn had been charged with robbery, aggravated robbery, and sexual assault.  *Id.* at

1214.  He pled guilty to robbery, but the sexual assault charge was dismissed.  *Id.*

Despite the dismissal of the sexual assault charge, he was forced to register as a sex

offender both within prison and later as a condition of parole.  *See id.* at 1217, 1221.  We

concluded that "Mr. Gwinn ha[d] sufficiently alleged that his classification as a sex

offender outside the prison walls implicated a liberty interest."  *Gwinn*, 354 F.3d at 1223-

24.  Applying the "stigma plus" test, we explained why requiring a person to register as a

sex offender triggers the protections of procedural due process:

> Mr. Gwinn has alleged that (1) the government made a false statement about
> him—that he was a sexual offender—that was sufficiently derogatory to injure his
> reputation, and that (2) he experienced a governmentally imposed burden that
> "significantly altered his . . . status as a matter of state law," in that he was
> required to register as a sex offender.  These allegations are sufficient to meet the
> applicable "stigma-plus" standard.

*Id.* at 1224 (quoting *Paul*, 424 U.S. at 710-11) (citation and brackets omitted).[10]

### (b) *Process Due*

Second, assuming Mr. Brown has a due process liberty interest, we determine the

appropriate level of process "through an analysis of 'the risk of an erroneous deprivation'

of the private interest if the process were reduced and 'the probable value, if any, of

---

[10] In a footnote, we added that "[t]he Supreme Court's recent decision in
[*Connecticut Department of Pub. Safety v. Doe*, 538 U.S. 1 (2003)] does not foreclose
this due process claim.  In *Doe*, the Court held the Connecticut sex offender registration
statute did not violate the procedural due process rights of individuals who had already
been convicted of sexual offenses because 'the law's requirements turn on an offender's
conviction alone—*a fact that a convicted offender has already had a procedurally
safeguarded opportunity to contest*."  354 F.3d at 1224 n.6 (quoting *Doe*, 538 U.S. at 9).

additional or substitute procedural safeguards.'" *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004) (quoting *Mathews*, 424 U.S. at 335) (O'Connor, J., plurality opinion). *Gwinn* did not resolve exactly what level of process is required before a person may be directed to register as a sex offender. But *Gwinn*'s holding that a prison inmate is entitled to certain procedural protections before being classified as a sex offender sets a floor for the minimum level of process due to a person directed to register as a sex offender outside of prison.

We explained in *Gwinn* that, before an inmate can be classified as a sex offender, the inmate is entitled to "notice of the charges, an opportunity to present witnesses and evidence in defense of those charges, and a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action." *Gwinn*, 354 F.3d at 1219. We then suggested that the procedural protections due to a person before being classified as a sex offender outside the prison walls would be at least as extensive. *See id.* at 1222. We relied on *Wolff v. McDonnell*, 418 U.S. 539 (1974), a Supreme Court case which held that prison inmates were not entitled to the same procedural protections as parolees.

## ii. *Application to Mr. Brown*

Applying *Paul* and *Gwinn*, we recognize that, assuming the facts alleged in his Complaint are true, Mr. Brown (1) had a liberty interest in not being placed on sex offender probation or on the sex offender registry; (2) he was deprived of that interest; and (3) he received inadequate process before the government imposed such a deprivation.

### (a) *Due Process Interest*

24

Officer Montoya wrongly placed Mr. Brown in the sex offender probation unit and directed him to register as a sex offender. As in *Paul*, he thereby made a false statement about Mr. Brown. Under New Mexico's Probation Statute, false imprisonment is not a sex offense. *See* N.M. Stat. Ann. § 31-20-5.2(F). Under New Mexico's sex offender Registry Statute, false imprisonment is not a sex offense unless the victim is a minor. *See id.* § 29-11A-3(E)(7). Mr. Brown pled guilty to a false imprisonment offense that does not include as one of its elements that the victim is a minor. *See id.* § 30-4-3. He alleges that the indictment charging him with false imprisonment contained no allegations that the victim was a minor. *See* Complaint, para. 19. He further alleges that the state court at sentencing did not state that his victim was a minor. *See id.*, para 22. Mr. Brown finally alleges that at the June 24, 2009 hearing, neither the state court nor the prosecutor said that they were aware that the victim was a minor. *See id.*, para. 27-28.

Placing Mr. Brown in the sex offender probation unit and on the sex offender registry sufficed to damage Mr. Brown's reputation. As we said in *Gwinn*, a false statement that a person is a sex offender is "sufficiently derogatory to injure [his] reputation." *See Gwinn*, 354 F.3d at 1224.[11]

Officer Montoya's alleged actions imposed on Mr. Brown two burdens that "significantly altered [his] status as a matter of state law." *See id.* (quoting *Paul*, 424 U.S. at 710-11). First, sex offender registration carries steep penalties. The Registry

---

[11] Placing a person's name on a public registry suffices as a public statement for the purposes of the stigma plus test. *See, e.g., Valmonte v. Bane*, 18 F.3d 992, 1000 (2d Cir. 1994) ("There is no dispute that [plaintiff]'s inclusion on the [child abuser registry] potentially damages her reputation by branding her as a child abuser . . .").

Statute states that "[a] sex offender who willfully or knowingly fails to comply with the registration requirements set forth in this section is guilty of a fourth degree felony." N.M. Stat. Ann. § 29-11A-4(N). In *Gwinn*, we said that, because sex offender registration imposes "on a person . . . a new set of legal duties that, if disregarded, subject him or her to felony prosecution, [it] constitutes a change of that person's status under state law." 354 F.3d at 1223 n.4 (quoting *Doe v. Dept. of Pub. Safety*, 271 F.3d 38, 57 (2d Cir. 2001), *reversed on other grounds by Doe*, 530 U.S. 1).

Second, placing Mr. Brown in the sex offender probation unit altered his legal status because the Policy states that sex offenders' "travel, employment and residency are subject to restrictions that may be more stringent than those normally imposed on other types of offenders." Policy at 4. When Officer Montoya assigned Mr. Brown to the sex offender probation unit, his legal status was changed from that of an ISP probationer to that of a sex offender probationer.

### (b) *Process Due*

Mr. Brown also alleges that he did not receive adequate process. According to the Complaint, Officer Montoya gave Mr. Brown no process before placing him in the sex offender probation unit and directing him to register as a sex offender. In *Gwinn*, we held that a prison inmate is entitled to "notice of the charges, an opportunity to present witnesses and evidence in defense of those charges, and a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action" before being classified as a sex offender in prison. 354 F.3d at 1219. The procedural protections owed to a person before being classified as a sex offender outside of prison

26

are at least as extensive as those owed to a prison inmate. *See id.* at 1222. According to the Complaint, Mr. Brown did not even receive the procedural protections that would have been due before a prison inmate could be classified as a sex offender. He therefore sufficiently alleged that he did not receive constitutionally adequate process.

### iii. *State of Mind*

To overcome qualified immunity, Mr. Brown also must allege that Officer Montoya acted with the requisite state of mind. *See Dodds*, 614 F.3d at 1199.

According to the Supreme Court, a plaintiff must show that the defendant was more than simply negligent to make out a procedural due process claim. *See Daniels v. Williams*, 474 U.S. 327, 333-36 (1986) (holding that simple negligence was insufficient for a due process claim).[12]

The circuit courts have responded accordingly in requiring a state of mind element such as recklessness or gross negligence. *See Chambers v. Sch. Dist. of Phila. Bd. Of Educ.*, 587 F.3d 176, 196 (3d Cir. 2009) (requiring that, for a procedural due process claim, a plaintiff "at a minimum, prove recklessness or gross negligence" (quotation omitted)); *Howard v. Grinage*, 82 F.3d 1343, 1350 (6th Cir. 1996) (requiring "conduct

---

[12] The *Daniels* Court did not clarify whether it took the plaintiff's claim to be one of procedural or substantive due process, but other courts have understood the holding in *Daniels* about state of mind to apply to procedural due process claims. *See Jordan v. Fox, Rothschild, O'Brien, & Frankel*, 20 F.3d 1250, 1277 (3rd Cir. 1994) ("In *Daniels* the Supreme Court stated a plaintiff who wishes to sustain a § 1983 claim based upon a violation of procedural due process must, at a minimum, prove recklessness or 'gross negligence' and in some instance may be required to show a 'deliberate decision to deprive' the plaintiff of due process.").

27

undertaken with something more than negligence"). The Tenth Circuit has not resolved this issue.[13]

We need not decide the appropriate state of mind test to resolve this appeal because Mr. Brown's Complaint alleges conduct that was "intentional, malicious, sadistic, willful, wanton, obdurate, and in gross and reckless disregard of [Mr. Brown's] constitutional rights." Complaint, para. 44.[14] Viewing the facts alleged in the Complaint "in the light most favorable to [Mr. Brown]," *Moore*, 438 F.3d at 1039, we conclude that Officer Montoya had a sufficiently culpable state of mind in misclassifying Mr. Brown as a sex offender.

### b. *Clearly Established*

For Mr. Brown to overcome Officer Montoya's qualified immunity, the procedural due process right must be "clearly established at the time of defendant's alleged misconduct." *Leverington*, 643 F.3d at 732. "[F]or the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly

---

[13] We did not resolve what state of mind is required for a procedural due process claim in *Dodds* because *Dodds* was a substantive due process case. We said that "procedural due process violations focus on the sufficiency of the procedural protections afforded the plaintiff, not the state of mind of the officials who establish or apply the policies." *Dodds*, 614 F.3d at 1209 n.2 (quotation omitted).

We suggested that we would require more than simple negligence in *Specht v. Jensen*, 832 F.2d 1516 (10th Cir. 1987), when we said that "a state official's negligence does not invariably rise to the level of an abuse of power necessary to give rise to a due process violation" without stating whether we were referring to substantive or procedural due process. *Id.* at 1521.

[14] Because the Complaint alleges that Officer Montoya directed Mr. Brown to register as a sex offender and that action forms the basis of the procedural due process claim, the Complaint's allegation of "Defendants'" state of mind includes Officer Montoya.

established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Stearns*, 615 F.3d at 1282 (quotation omitted).

Mr. Brown's Complaint sufficiently alleges a constitutional violation that is clearly established. *Gwinn* was decided in 2004, well before Officer Montoya's conduct in 2009. In *Gwinn*, Mr. Gwinn was required to register as a sex offender as a condition of parole. 354 F.3d at 1221. Mr. Brown was required to register as a sex offender as a condition of probation. We see no relevant difference between a registry requirement for parole and one for probation with respect to the alteration of legal status issue. A defendant who fails to abide by the terms of either parole or probation may be returned to incarceration. Requiring a right to be clearly established "is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent." *Dodds*, 614 F.3d at 1206. Mr. Brown, like Mr. Gwinn, has sufficiently alleged that he "experienced a governmentally imposed burden that significantly altered his status as a matter of state law, in that he was required to register as a sex offender." *Gwinn*, 354 F.3d at 1224 (brackets, quotations, and ellipsis omitted).

Although *Gwinn* did not specifically resolve what level of procedural protections are due before a person may be directed to register as a sex offender outside of prison, its holding that an inmate is entitled to certain minimal procedural protections before being classified as a sex offender in prison clearly establishes that directing a person to register as a sex offender outside of prison triggers at least that level of process. Mr. Brown

29

alleges that Officer Montoya did not provide him with any process, much less the level of procedural protections owed to a prison inmate before being classified as a sex offender.

Accepting as true Mr. Brown's allegation that Officer Montoya had no factual basis to believe that his victim was a minor, it should have been apparent to a reasonable officer that classifying Mr. Brown as a sex offender violated his clearly established procedural due process right. *See Stearns*, 615 F.3d at 1282.

We therefore affirm the district court's denial of Officer Montoya's motion to dismiss Mr. Brown's procedural due process claim against him.

## 2. *Substantive Due Process*

Mr. Brown alleges that Officer Montoya violated substantive due process when he was classified as a sex offender "without lawful basis." *See* Complaint, para. 38. We do not address whether this conduct violates substantive due process. Because the issue is whether Officer Montoya has qualified immunity, it is sufficient to determine whether the alleged conduct violates a clearly established substantive due process right.[15] No clearly established Supreme Court or Tenth Circuit precedent holds that it does.

Substantive due process bars "certain government actions regardless of the fairness of the procedures used to implement them."[16] *Cnty. of Sacramento v. Lewis*, 523

---

[15] For a qualified immunity analysis, we can decide first, under *Pearson*, whether the constitutional right the defendant has allegedly violated was clearly established. *See* 555 U.S. at 242.

[16] Insofar as Mr. Brown claims a substantive due process violation based on Officer Montoya's placing him in the sex offender probation unit and directing him to register as a sex offender *without a hearing*, Mr. Brown confuses substantive due process with procedural due process.

30

U.S. 833, 840 (1998) (quotation omitted).  Executive action violates substantive due process when it "can properly be characterized as arbitrary, or conscience shocking, in a constitutional sense." *Id.* at 847 (quotation omitted). The Supreme Court has "always been reluctant to expand the concept of substantive due process." *Id.* at 842 (quotation omitted).

Mr. Brown relies primarily on two cases:  *Gwinn* and *ACLU of New Mexico v. City of Albuquerque*, 2006-NMCA-078, 139 N.M. 761, 137 P.3d 1215 (N.M. Ct. App. 2006).  *Gwinn* is a procedural due process case, see 354 F.3d at 1217 (referring to Mr. Gwinn's claim as one of procedural due process), and cannot support a clearly established *substantive* due process right.[17]  Nor does *ACLU of New Mexico* provide support because it is a state intermediate court of appeals case.  "In order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Stearns*, 615 F.3d at 1282 (quotation omitted).

In our analysis of Mr. Brown's procedural due process claim, we recognized, based on *Paul* and *Gwinn*, that the alleged conduct in his Complaint entitled him to procedural safeguards before he was classified as a sex offender.  But Mr. Brown does not offer and we have not found clearly established precedent that Officer Montoya's

---

[17] *See United States v. Deters*, 143 F.3d 577, 582 (10th Cir. 1998) ("Unlike procedural due process, substantive due process protects a small number of 'fundamental rights' from government interference regardless of the procedures used."); *Gonzalez-Fuentes v. Molina*, 607 F.3d 864, 880 n.13 (1st Cir. 2010) ("Though we hold below that a liberty interest . . . is protected by procedural due process, it does not automatically follow that the same interest will be protected by its substantive sibling.").

alleged actions violate substantive due process.  We therefore reverse the district court's denial of Officer Montoya's motion to dismiss the substantive due process claim against him on qualified immunity grounds.

### 3. *Equal Protection*

Mr. Brown's Complaint fails to allege facts showing that Officer Montoya violated his right to equal protection because it does not allege that an otherwise similarly situated person was treated differently from him.  He therefore cannot overcome Officer Montoya's qualified immunity defense.

Different types of equal protection claims call for different forms of review.  A claim that a state actor discriminated on the basis of a suspect (e.g., race), quasi-suspect (e.g., gender), or a non-suspect classification calls for strict, intermediate, or rational basis scrutiny, respectively.  *See Price-Cornelison v. Brooks*, 524 F.3d 1103, 1109-10 (10th Cir. 2008).  But in each instance, "to assert a viable equal protection claim, plaintiffs must first make a threshold showing that they were treated differently from others who were similarly situated to them." *Barney v. Pulsipher*, 143 F.3d 1299, 1312 (10th Cir. 1998).

Mr. Brown alleges that Officer Montoya's actions were

based on a classification between individuals convicted of crimes involving no sexual act, motive, or purpose where Defendants have alleged but never proven through a conviction in a court of competent jurisdiction that a victim of the crime is less than eighteen years of age, and individuals convicted of crimes involving no sexual act, motive, or purpose where Defendants have not made such an unproven allegation concerning the victim's age.

32

Complaint, para. 47. He also alleges that Officer Montoya acted "on a criterion that lacks any rational relationship to any legitimate state objective." Complaint, para. 49.

In addition to alleging that government action discriminated against him based on a classification that lacked a rational basis, Mr. Brown must allege facts to show that an otherwise similarly situated person was treated differently than he was. "[W]ith any equal protection claim, [the plaintiff] must also demonstrate that he was treated differently than another who is similarly situated." *Bartell v. Aurora Pub. Schools*, 263 F.3d 1143, 1149 (10th Cir. 2001) (quotation omitted), *overruled on other grounds by Pignanelli v. Pueblo School Dist. No. 60*, 540 F.3d 1213 (10th Cir. 2008).

The pleading requirement of an allegation that a similarly situated person was treated differently applies both when the plaintiff challenges a government action that discriminates based on membership in a non-protected class, *see Price-Cornelison*, 524 F.3d at 1120, or membership in a "class of one." *See Kansas Penn*, 2011 WL 3849751 at *4.

Mr. Brown alleges that he was treated differently from others who had been "convicted of crimes involving no sexual act, motive, or purpose." But he does not allege facts about any particular person or persons who were treated differently from him. Instead, Mr. Brown makes conclusory allegations. We have said that, in the context of a § 1983 claim, "[c]onclusory allegations are not sufficient to state a constitutional violation." *Robertson v. Las Animas Cnty. Sheriff's Dept.*, 500 F.3d 1185, 1193 (10th Cir. 2007).

33

We therefore reverse the district court's denial of Officer Montoya's motion to dismiss Mr. Brown's equal protection claim on qualified immunity grounds.

### III. CONCLUSION

We have jurisdiction over the qualified immunity and absolute legislative immunity issues, but we lack jurisdiction over the statutory immunity issue.

Mr. Brown has not alleged sufficient facts to establish that Secretary Williams violated any of his constitutional rights. We therefore REVERSE, on qualified immunity grounds, the district court's denial of Secretary Williams's motion to dismiss Mr. Brown's claim against Secretary Williams in his individual capacity. Because our ruling disposes of Mr. Brown's individual capacity claim against Secretary Williams, we do not reach the absolute legislative immunity issue.

Mr. Brown has alleged sufficient facts to establish that Officer Montoya violated his clearly established procedural due process right. We therefore AFFIRM the district court's denial of Officer Montoya's motion to dismiss the procedural due process claim because the Complaint's allegations overcome the qualified immunity defense. Mr. Brown has not alleged sufficient facts to establish that Officer Montoya violated a clearly established substantive due process right or that Officer Montoya violated his equal protection right. We therefore REVERSE the district court's denial of Officer Montoya's motion to dismiss the substantive due process and equal protection claims because the Complaint's allegations do not overcome the qualified immunity defense.

We remand to the district court for further proceedings consistent with this opinion.