**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**October 26, 2017**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

DAMON ELLIS,

     Plaintiff-Appellee,

v.

JOHN OLIVER, in his individual and
official capacities,

     Defendant-Appellant,

and

UNITED STATES OF AMERICA;
FEDERAL BUREAU OF PRISONS;
DAVID ALLRED, DO, in his individual
and official capacities; JOHN/JANE
DOES, in their individual and official
capacities,

     Defendants.

No. 16-1387
(D.C. No. 1:15-CV-01045-KLM)
(D. Colo.)

**ORDER AND JUDGMENT**[*]

Before **MATHESON**, **McKAY**, and **McHUGH**, Circuit Judges.

Warden John Oliver appeals the magistrate judge's denial of his qualified

immunity defense to Eighth Amendment claims brought against him in his individual

---

[*] This order and judgment is not binding precedent, except under the doctrines of
law of this case, res judicata, and collateral estoppel. It may be cited, however, for its
persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

capacity. Reviewing the magistrate judge's denial de novo, we reverse the ruling and remand with instructions for the magistrate judge to dismiss the claims against Warden Oliver.

## I.

On October 20, 2013, inmate Damon Ellis injured his right ring finger at the United States Penitentiary in Florence, Colorado. Several days later, the prison medical staff examined Mr. Ellis and diagnosed him with a ruptured tendon requiring immediate surgery. Prison staff placed a request for a consultation with a hand surgeon. In late November, Mr. Ellis saw two outside medical providers who also advised urgent surgery. A third meeting with a prison physician mid-December confirmed this recommendation.

Mr. Ellis saw a hand specialist in January 2014, who explained that a primary repair of the tendon was no longer possible because too much time had passed. The specialist suggested three options: (1) doing nothing, which would result in limited mobility, (2) removing the tendon, which would also result in limited mobility, or (3) conducting a two-stage surgery to first remove the tendon and then, three months later, perform a tendon graft. Mr. Ellis was eligible for transfer to a residential reentry center or halfway house as soon as March 2014. In February, a prison medical staff member, allegedly acting under "the direction and decision of various Supervisory Defendants," informed Mr. Ellis that he could either receive the two-stage surgery and remain in prison until he healed, or he could be transferred to a halfway house without having the procedure. (Appellant's App. at 18.) Mr. Ellis chose not to delay his transfer out of the

2

penitentiary, but also refused to sign a medical release. He now claims to have lost the use of his finger.

In May 2015, Mr. Ellis filed this suit against the United States government, the Federal Bureau of Prisons, prison warden John Oliver in his official and individual capacities, prison physician David Allred in his official and individual capacities, and five unnamed defendants in their official and individual capacities for violations of the Eighth Amendment and the Federal Torts Claims Act. The defendants sought dismissal of all of Mr. Ellis's claims under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). The parties consented to have the magistrate judge conduct all proceedings in the case, including ruling on the defendants' motion for dismissal.

The magistrate judge granted the defendants' motion as to Mr. Ellis's constitutional claims against them in their official capacities and as to Dr. Allred in his individual capacity. The court further dismissed Mr. Ellis's tort claims on procedural and jurisdictional grounds. The magistrate judge rejected Warden Oliver's qualified immunity defense, however, concluding that Mr. Ellis had alleged a plausible Eighth Amendment claim against the warden in his individual capacity. Warden Oliver challenges the magistrate judge's denial of his qualified immunity defense on appeal.

## II.

We review the magistrate judge's denial of Warden Oliver's motion to dismiss based on qualified immunity de novo. *See, e.g.*, *Brown v. Montoya*, 662 F.3d 1152, 1162 (10th Cir. 2011). Under this standard, "all well-pleaded factual allegations in the . . . complaint are accepted as true and viewed in the light most favorable to the nonmoving

3

party," *Moore v. Guthrie*, 438 F.3d 1036, 1039 (10th Cir. 2006) (internal quotation marks omitted) (alteration in original), but the pleadings must "contain sufficient factual matter . . . to state a claim to relief that is plausible on its face," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks  omitted).  To achieve "factual plausibility," a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  In setting out these plausible claims, the complaint must "make clear exactly *who* is alleged to have done *what* to *whom*, . . . as distinguished from collective actions against the state."  *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1215 (10th Cir. 2011) (internal quotation omitted).

Here, Mr. Ellis brings claims against Warden Oliver under *Bivens*, which "provides a 'private right of action for damages against federal officers' who violate certain constitutional rights."  *Pahls v. Thomas*, 718 F.3d 1210, 1225 (10th Cir. 2013) (quoting *Iqbal*, 556 U.S. at 675); *see also Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971).  Mr. Ellis alleges that the warden violated his Eighth Amendment rights by failing to provide adequate medical care and treatment and by requiring an extension of incarceration to receive surgery.  Under the doctrine of qualified immunity, "government officials are not subject to damages liability for the performance of their discretionary functions when their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Buckley v. Fitzsimmons*, 509 U.S. 259, 268 (1993) (internal quotation marks omitted).  Thus, to survive Warden Oliver's 12(b)(6) motion, Mr. Ellis must allege a

4

plausible violation of his clearly established constitutional rights sufficient to overcome a qualified immunity defense.

In analyzing a qualified immunity defense, this court must consider (1) whether the plaintiff's alleged facts make out a violation of a constitutional right, and (2) whether the right at issue was clearly established at the time of the defendant's alleged misconduct. *Leverington v. City of Colo. Springs*, 643 F.3d 719, 732 (10th Cir. 2011). Accordingly, we first determine whether Mr. Ellis has alleged a plausible constitutional violation.

The specific requirements to establish a *Bivens* claim vary, depending on the constitutional right at issue. *See Iqbal*, 556 U.S. at 676; *Pahls*, 718 F.3d at 1225. Regardless of these differences, every *Bivens* action requires the plaintiff to plead facts showing that each defendant violated the Constitution through his or her "own individual actions." *Iqbal*, 556 U.S. at 676 (holding that "vicarious liability" is inapplicable to *Bivens* claims). These "specific actions" must show each defendant's personal involvement in the alleged constitutional violation. *Pahls*, 718 F.3d at 1225-26. The plaintiff must also show that each defendant "caused the complained of constitutional harm" and "acted with the state of mind required to establish the alleged constitutional deprivation." *Id.* at 1225 (quoting *Dodds v. Richardson*, 614 F.3d 1185, 1199 (10th Cir. 2010)); *see also Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 767 (10th Cir. 2013).

Here, Warden Oliver concedes that Mr. Ellis's constitutional rights appear to have been violated by someone. (Appellant's Reply Br. at 3.) He maintains, however, that

5

Mr. Ellis's complaint does not allege facts sufficient to plausibly establish that the warden personally violated Mr. Ellis's constitutional rights with the requisite state of mind. (*Id.* at 3-4.) After reviewing the pleadings in the light most favorable to Mr. Ellis, we concur.

The most direct allegation of Warden Oliver's personal involvement in Mr. Ellis's constitutional harm is the claim that the prison staff member acted "pursuant to the direction and decision of various Supervisory Defendants" in telling Mr. Ellis that he had to choose between treatment and continued incarceration. (Appellant's App. at 18.) The complaint identifies "Supervisory Defendants" as "Defendant Oliver and those Defendants Jane/John Doe 1-5 who have supervisory responsibilities." (*Id.* at 17.) As Warden Oliver correctly argues, the term "various" is ambiguous as to which of the six "Supervisory Defendants" are being accused, and it may not even include the warden. The complaint contains no specific allegations of Warden Oliver's actions separate from the other defendants. As this court has previously held, an "undifferentiated contention that 'defendants' infringed [a plaintiff's] rights" is insufficient to meet the *Bivens* pleading requirements. *Pahls*, 718 F.3d at 1225-26; *see also Brown*, 662 F.3d at 1165.

Mr. Ellis argues the complaint adequately alleges Warden Oliver's individual actions because the warden must have known about Mr. Ellis's condition, pressing need for surgery, and visit to the outside specialist by virtue of his supervisory role at the prison. (Appellee's Br. at 18-19.) This court previously considered a similar claim that a warden's position necessarily made him aware of an inmate's deteriorating mental health, ultimately concluding that it is "not plausible to infer that a warden is aware of

6

everything that happens to each inmate in his custody." *Vega v. Davis*, 572 F. App'x 611, 618 (10th Cir. 2014) (internal quotation marks omitted). And Mr. Ellis presents no additional factual allegations to support his bare assertion that Warden Oliver "knew or should have known" about the need for medical treatment and the resulting constitutional harm. (*See* Appellant's App. at 15.)

Ultimately, Mr. Ellis has failed to identify any "specific actions taken by [the warden], or specific policies over which [the warden] possessed supervisory responsibility, that violated [his] clearly established constitutional rights." *Pahls*, 718 F.3d at 1228. While this court is sympathetic to the informational disparity[1] between a prisoner and prison officials, especially in the pre-discovery context, something more is required to establish a constitutional violation and overcome the presumption of qualified immunity. *See id.* at 1227; *Iqbal*, 556 U.S. at 677-679.

Since Mr. Ellis has failed to allege facts plausibly showing that the warden's individual actions violated his constitutional rights, he has also failed to show that Warden Oliver caused the constitutional harm and did so with the requisite state of mind. Furthermore, because we conclude that Mr. Ellis failed to plead facts sufficient to show a plausible constitutional violation committed by Warden Oliver, we need not reach the

---

[1] *But see, e.g.*, *Bustos v. United States*, No. 08-CV-00153-LTB-MEH, 2009 WL 416511, at *3 (D. Colo. Feb. 18, 2009) ("The Court sees utility for judicial efficiency and fairness to the parties in allowing . . . limited discovery into the identities of the John Doe defendants [prior to ruling on the defendants' pending motion to dismiss]."); *see also Crawford-El v. Britton,* 523 U.S. 574, 593 n. 14 (1998) (" . . . [L]imited discovery may sometimes be necessary before the district court can resolve a motion for summary judgment based on qualified immunity.") The issue of allowing limited discovery into the identities of the John/Jane Doe defendants was neither raised nor decided in this case.

7

second prong of the analysis to determine whether the right that Warden Oliver allegedly violated was clearly established.

## III.

We accordingly **REVERSE** and **REMAND** this appeal with instructions to dismiss the claims against Warden Oliver without prejudice based on qualified immunity.

ENTERED FOR THE COURT


Monroe G. McKay
Circuit Judge