**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**July 25, 2016**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

KRISTINE J. KELLUM,

    Plaintiff - Appellee,

v.

ADELA MARES; STEPHANIE BREEN,

    Defendants - Appellants,

and

BERNALILLO COUNTY; BERNALILLO
COUNTY COMMISSION;
CORRECTIONAL HEALTHCARE
COMPANIES, INC.; TIMOTHY TRAPP;
KAAKI GARNER; TAILEIGH
SANCHEZ,

    Defendants.

Nos. 15-2215 & 15-2225
(D.C. No. 1:14-CV-00163-RB-CG)
(D. N.M.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **HARTZ**, **HOLMES**, and **McHUGH**, Circuit Judges.
_____

---

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. _See_ Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Kristine Kellum filed a 42 U.S.C. § 1983 civil rights suit against personnel at the Bernalillo County Metropolitan Detention Correctional Center ("BCMDC") alleging in part that they were deliberately indifferent to her serious medical condition in violation of her Eighth Amendment constitutional rights. The district court denied a motion to dismiss filed by defendant Stephanie Breen, R.N., a privately employed nurse assigned to BCMDC, and denied a motion for summary judgment filed by Adela Mares, a BCMDC correctional officer employed by Bernalillo County. Ms. Breen and Ms. Mares filed interlocutory appeals, which we have consolidated. We affirm.

## I. BACKGROUND

Ms. Kellum alleges she was booked into BCMDC with a fever and cough, but despite her obvious, ongoing, and worsening fever and cough, and vital signs indicating a need for urgent medical attention, her condition was not diagnosed or treated until she was taken by ambulance to a hospital a week later.[1] There she was diagnosed with endocarditis (infection of the heart) with septic pulmonary emoli (blockage of the pulmonary arteries with infectious particles) and a large left-side pneumothorax (collapsed lung). Ms. Kellum required extensive medical treatment, including open heart surgery, and will require additional open heart surgeries and significant medical monitoring for the rest of her life. She alleges that if her

---

[1] Ms. Kellum asserted nine federal and New Mexico state causes of action against numerous defendants. Only Ms. Kellum's § 1983 civil rights claims against defendants Breen and Mares are at issue in these appeals.

endocarditis had been diagnosed sooner, her condition would have been less severe, she would have avoided damage to her heart and not needed open-heart surgery.

## A. ALLEGATIONS AGAINST NURSE BREEN

Because Nurse Breen appeals the denial of her Fed. R. Civ. P. 12(c) motion for partial judgment on the pleadings, we accept as true all well-pleaded factual allegations in Ms. Kellum's complaint and view them in the light most favorable to her. *See Brown v. Montoya*, 662 F.3d 1152, 1160 n.4, 1162 (10th Cir. 2011). Ms. Kellum was booked into BCMDC on October 17, 2012, and was so ill with fever that she had to lie down on the concrete floor to cool herself, and was unable to get out of bed by herself, to dress herself, or to stand at the cell door for meals or sick call. Her cellmates repeatedly requested medical treatment for her. On October 22, Ms. Kellum's cellmates helped her stand for sick call, when she was seen by Nurse Breen. Nurse Breen is employed by defendant Correctional Healthcare Companies, Inc., a private corporation providing health care services to BCMDC.

Ms. Kellum described her condition to Nurse Breen, stating that her symptoms were worsening, her fever was not going down, and she was having trouble breathing with chest pains and a worsening cough. Nurse Breen assessed Ms. Kellum under a "Shortness of Breath" protocol, observing that Ms. Kellum's shortness of breath was not intermittent and existed even at rest, she had difficulty taking a deep breath, and had nausea, fever and chills, and poor skin color. Ms. Kellum alleges this Shortness of Breath protocol required Nurse Breen to monitor Ms. Kellum's heart with an electrocardiogram (ECG), but no ECG test was performed. Ms. Kellum alleges her

3

vital signs on October 22 of a high fever and low blood pressure indicated she needed to be transported to an emergency room for emergency medical care,[2] but no medical provider at BCMDC, including Nurse Breen, obtained emergency medical treatment for her. Nurse Breen told Ms. Kellum she was "one sick cookie." Breen Aplt. App. at 176 (internal quotation marks omitted).

Ms. Kellum was also examined on October 22 by defendant Kaaki Garner, R.N., and defendant Timothy Trapp, M.D., who gave her Tylenol and ibuprofen and advised her to drink more water. Neither Nurse Breen nor any other medical provider at BCMDC took any x-rays, or performed any sort of ECG or other laboratory testing in an attempt to diagnose Ms. Kellum or understand the nature of her illness until she was taken to the hospital on October 25.

Nurse Breen moved for dismissal of Ms. Kellum's Eighth Amendment § 1983 claim against her. Although she is a private medical care provider, she argued she was entitled to assert a qualified immunity defense, which shields "government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotation marks omitted). The district court denied the motion. It was persuaded that Nurse Breen was not entitled to qualified immunity as a private individual, but

---

[2] According to her complaint, Ms. Kellum's vital signs during the sick call with Nurse Breen were a temperature of 102.5° F, blood pressure of 95/55, and a pulse rate of 125 beats per minute. Her vital signs later that day were a temperature of 101.2°F, blood pressure of 88/52, and a pulse rate of 128.

ruled that even if she was entitled to assert that defense, the motion would fail because Ms. Kellum's complaint plausibly alleged Nurse Breen violated her clearly established Eighth Amendment rights.

### B. ALLEGATIONS AGAINST MARES

Because Ms. Mares's appeal is from the denial of qualified immunity at the summary judgment stage, and our jurisdiction is limited to purely legal issues, "we take, as given, the facts that the district court assumed when it denied summary judgment." *Al–Turki v. Robinson*, 762 F.3d 1188, 1191 (10th Cir. 2014) (internal quotation marks omitted). Thus, we "rely on the district court's description of the facts, taken in the light most favorable to [Ms. Kellum], and do not reevaluate the district court's conclusion that the . . . record is sufficient to prove these facts." *Id.*

Ms. Kellum was placed in a general population pod at BCMDC at 4:30 p.m. on October 24. Ms. Mares was the only correctional officer on duty in that housing unit that evening. Ms. Kellum's fellow cellmate, Pilar Gutierrez, immediately recognized Ms. Kellum was gravely ill. She said Ms. Kellum could barely walk, her voice was a whisper, she was breathless, her lips were purple-ish blue, her skin was gray, her skin felt cold and muggy, and she looked like a zombie. Ms. Gutierrez told Ms. Mares that Ms. Kellum needed immediate medical attention. Ms. Mares responded that she was "really busy." Mares Aplt. App. Vol. VI at 441. Ms. Gutierrez asked Ms. Mares if Ms. Kellum could have a bed, explaining that she could not "even hold herself up. She's extremely sick." *Id.* Ms. Mares said she was working on it. Ms. Gutierrez told Ms. Mares that Ms. Kellum was "deathly ill." *Id*. Ms. Kellum told Ms. Mares,

5

"I'm going to die." *Id*. Ms. Mares said to Ms. Kellum, "I can tell by looking at you, you're sick," and told her "[m]edical has already seen you, so I guess you are going to die." *Id*. Ms. Kellum was not taken to the BCMDC medical unit until 10:08 p.m. Her request for a wheelchair to take her there was denied, and she walked to the medical unit in "excruciating" pain. *Id*.

Ms. Mares moved for summary judgment, which the district court denied. It ruled the evidence was sufficient for a reasonable jury to find Ms. Mares knew Ms. Kellum needed urgent medical care because she exhibited obvious symptoms of severe illness, including profuse sweating, difficulty breathing, and an inability to stand; she was told by both Ms. Kellum and Ms. Gutierrez that Ms. Kellum felt and looked deathly ill; and Ms. Mares expressly stated she could see Ms. Kellum was sick. The district court concluded that, notwithstanding this knowledge, the evidence showed Ms. Mares delayed Ms. Kellum's receipt of medical care for five hours and told her she was going to have to die.

The district court noted Ms. Kellum's expert medical evidence that this five hour delay worsened her condition and caused her unnecessary pain. *See Mata v. Saiz*, 427 F.3d 745, 755 (10th Cir. 2005) (holding that plaintiff may show a delay in medical treatment resulted in "substantial harm" by providing specific evidence that the delay "caused either unnecessary pain or a worsening of [the] condition"). The district court cited medical testimony from Ms. Kellum's expert, Dr. Ross, that the staphylococcus aureus bacterium responsible for Ms. Kellum's heart infection doubles every twenty minutes, that the bacterium is very aggressive, and that a few

6

days of delay could make a big difference in the patient's outcome. Dr. Ross also testified that seventy-five percent of patients with endocarditis caused by sepsis are treated successfully with antibiotics and without surgery when they receive timely emergency care at the first signs of sepsis. The district court concluded this evidence was sufficient to support the reasonable inference that the five hours Ms. Mares delayed medical treatment for Ms. Kellum worsened Ms. Kellum's condition because during that time the bacteria doubled fifteen times, or increased by a factor of 16,386. Further, the district court cited the evidence showing Ms. Kellum experienced substantial and debilitating pain and suffering during the five hours Ms. Mares delayed Ms. Kellum's receipt of medical treatment. Accordingly, it denied Ms. Mares's summary judgment motion.

## II. APPLICABLE LAW

### A. JURISDICTION

We have jurisdiction under 28 U.S.C. § 1291 over the final collateral orders denying Nurse Breen's and Ms. Mares's motions on qualified-immunity grounds. *See Ashcroft v. Iqbal*, 556 U.S. 662, 672 (2009) (holding appellate courts have jurisdiction over orders rejecting as a matter of law qualified immunity raised in a motion to dismiss). Whether a plaintiff has sufficiently "alleged a violation of [her] clearly established constitutional rights to overcome [the] defense of qualified immunity is an issue of law reviewable on interlocutory appeal." *Brown*, 662 F.3d at 1162. Our review is de novo. *Id*.

Our jurisdiction to review Ms. Mares's appeal of her motion for summary judgment is limited, however, to "(1) whether the facts that the district court ruled a reasonable jury could find would suffice to show a legal violation, or (2) whether that law was clearly established at the time of the alleged violation." *Henderson v. Glanz*, 813 F.3d 938, 948 (10th Cir. 2015) (internal quotation marks omitted). We do not have jurisdiction to determine "whether or not the pretrial record sets forth a genuine issue of fact for trial," although "even when the district court concludes issues of material fact exist, we [may review] the legal question of whether a defendant's conduct, as alleged by the plaintiff, violates clearly established law." *Id*. (brackets and internal quotation marks omitted).

B.  EIGHTH AMENDMENT

There is an obligation for the government to "provide medical care for those whom it is punishing by incarceration." *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). Prison officials violate the Eighth Amendment's ban on cruel and unusual punishment if their "deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain." *Id*. at 104 (internal quotation marks omitted). The test for deliberate indifference includes both an objective and subjective component. *Mata*, 427 F.3d at 751.

To satisfy the objective component, the alleged deprivation must be "sufficiently serious"; that is, it must expose the inmate to a "substantial risk of serious harm." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (internal quotation marks omitted). "[A] medical need is sufficiently serious if it is one that has been

8

diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Mata*, 427 F.3d at 751 (internal quotation marks omitted).

To satisfy the subjective component, the prison official "must have a sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834 (internal quotation marks omitted). The plaintiff must show that the defendant "[knew] of and disregard[ed] an excessive risk to inmate health or safety." *Id*. at 837. That is, the defendant "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*. "[W]hether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence." *Id*. at 842.

C.  QUALIFIED IMMUNITY

"When a defendant asserts qualified immunity at summary judgment," as did Ms. Mares, "the burden shifts to the plaintiff to show that:  (1) the defendant violated a constitutional right and (2) the constitutional right was clearly established." *Morris v. Noe*, 672 F.3d 1185, 1191 (10th Cir. 2012) (internal quotation marks omitted). "To determine whether the right was clearly established, we ask whether the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Estate of Booker v. Gomez*, 745 F.3d 405, 411 (10th Cir. 2014) (internal quotation marks omitted). Nurse Breen raised a qualified immunity defense at the motion to dismiss stage, which "subjects the defendant to a

9

more challenging standard of review than would apply on summary judgment," *Peterson v. Jensen*, 371 F.3d 1199, 1201 (10th Cir. 2004), as "it is the defendant's conduct as alleged in the complaint that is scrutinized," *Behrens v. Pelletier*, 516 U.S. 299, 309 (1996) (emphasis omitted).[3]

"It has been clearly established in this circuit since at least 2006 that a deliberate indifference claim will arise when 'a medical professional completely denies care although presented with recognizable symptoms which potentially create a medical emergency . . . and the prison official, knowing that medical protocol requires referral or minimal diagnostic testing to confirm the symptoms, sends the

---

[3] The district court concluded Nurse Breen was not entitled to qualified immunity both because she is a private person, not a public official, and because the complaint plausibly alleged she violated Ms. Kellum's clearly established constitutional rights. Although Nurse Breen challenges both grounds, we need only address the latter. As the district court noted, this court has yet to decide whether or not qualified immunity is available to employees of a private company providing medical services to inmates. *See Richardson v. McKnight*, 521 U.S. 399, 409–12 (1997) (holding that prison guards employed by a large, for-profit multistate private prison management company that had contracted with the state to manage the prison are not entitled to qualified immunity in a prisoner's § 1983 action); *McCullum v. Tepe*, 693 F.3d 696, 704 (6th Cir. 2012) (holding that a private doctor providing psychiatric services to inmates at a state prison is ineligible for qualified immunity); *but see Filarsky v. Delia*, ___ U.S. ___, 132 S. Ct. 1657, 1665, 1667–68 (2012) (extending qualified immunity under § 1983 to private investigator who was temporarily retained by a city to assist in an internal investigation, holding that "immunity under § 1983 should not vary depending on whether an individual working for the government does so as a full-time employee, or on some other basis").

We decline to decide this issue because we agree with the district court's alternative conclusion that, assuming for the sake of argument Nurse Breen could assert a qualified immunity defense, Ms. Kellum's complaint states a plausible claim that Nurse Breen is not entitled to such immunity because she violated Ms. Kellum's clearly established Eighth Amendment rights.

inmate back to his cell.'" *Al–Turki*, 762 F.3d at 1194 (quoting *Self v. Crum*, 439 F.3d 1227, 1232 (10th Cir. 2006)). It is also clearly established in this circuit that a delay in medical care constitutes an Eighth Amendment violation where the plaintiff can show the delay resulted in substantial harm. *Mata*, 427 F.3d at 751.

## III. ANALYSIS

### A. DENIAL OF NURSE BREEN'S MOTION TO DISMISS

The court must accept as true all well-pleaded factual allegations in Ms. Kellum's complaint, though to withstand a motion to dismiss, she must allege facts that make her stated claim for relief facially plausible. *Ashcroft*, 556 U.S at 678. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.

The district court held that Ms. Kellum's complaint plausibly alleged both the objective and subjective components of an Eighth Amendment claim. It ruled that the alleged delay and deprivation of medical treatment resulting in endocarditis heart damage, the need for open heart surgery, and the attendant unnecessary pain and suffering constitute harm sufficiently serious to satisfy the objective component of a deliberate indifference claim. Nurse Breen concedes Ms. Kellum's complaint plausibly alleges the objective component, but challenges the district court's finding that Ms. Kellum pled sufficient facts to plausibly show the subjective component.

The court identified the following factual allegations that support the claim that Nurse Breen knew of, and deliberately disregarded, an excessive risk to

11

Ms. Kellum's health from delayed treatment: Nurse Breen knew Ms. Kellum had an untreated fever and cough for five days, knew from the Shortness of Breath protocol she performed that Ms. Kellum's condition indicated the need for an ECG test, knew from Ms. Kellum's vital signs that emergency medical treatment was indicated, and recognized that Ms. Kellum was "one sick cookie." Breen Aplt. App. at 176, 184 (internal quotation marks omitted). The district court determined that this knowledge, coupled with Ms. Kellum's allegations that Nurse Breen did not take an x-ray, perform an ECG or any other laboratory testing to assess or diagnose the reason for her condition, or refer her to a hospital for emergency medical treatment, were sufficient to plausibly show Nurse Breen was deliberately indifferent. The court further noted the allegation that the severity of Ms. Kellum's condition was so obvious to her fellow inmates that they all recognized she needed urgent medical care and repeatedly requested medical treatment for her. *See Farmer*, 511 U.S. at 842 (holding "a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious").

On appeal, Nurse Breen argues that the allegations that she knew Ms. Kellum was very sick, and that the symptoms Ms. Kellum presented to her indicated a need for an ECG test and emergency medical treatment, are insufficient to state an Eighth Amendment claim because they rest on an assumption that she had the power to perform or order an ECG or other testing or to obtain emergency treatment for Ms. Kellum. She asserts she was merely a sick call nurse and her only purpose was to act as a gatekeeper to enable Ms. Kellum to see other medical providers, which she

12

asserts she did, because Ms. Kellum was later seen by Dr. Trapp and Nurse Garner. She asserts that Dr. Trapp was responsible for prescribing Ms. Kellum's medical treatment.

The problem with this argument is it rests on factual assertions that are not in the complaint. The complaint does allege that Nurse Breen saw Ms. Kellum at a sick call, but it does not include Nurse Breen's assertion that her only function was as a gatekeeper, that she lacked any power or authority to arrange for ECG or other testing or to refer Ms. Kellum to the hospital, or that Dr. Trapp was solely responsible for Ms. Kellum's medical treatment. Nurse Breen may ultimately present evidence in support of these allegations, but they may not be considered in a Rule 12(c) motion to dismiss on the pleadings.

Nurse Breen argues she cannot be liable because Ms. Kellum was later seen by Dr. Trapp and Nurse Garner. But Nurse Breen is not insulated from liability based on later medical care "[b]ecause deliberate indifference is assessed at the time of the alleged omission." *Estate of Booker*, 745 F.3d at 433 ("[A]ny assessment of [plaintiff's] condition conducted several hours after her encounter with [the nurse] is irrelevant to whether [the nurse] knew of and disregarded an excessive risk to [plaintiff's] safety." (internal quotation marks omitted)).

Nurse Breen argues Ms. Kellum's claim must fail because her complaint does not allege that it was obvious she was suffering from an infection of the tricuspid valve of her heart. But the relevant question is the *risk* of substantial harm, not whether the official knew of the specific medical condition causing the symptoms

13

presented by the prisoner. *Farmer*, 511 U.S. at 842 ("The question under the Eighth Amendment is whether prison officials, acting with deliberate indifference, exposed a prisoner to a sufficiently substantial *risk* of serious damage to his future health." (emphasis added) (internal quotation marks omitted)). In *Farmer*, the Court held a plaintiff can show deliberate indifference by demonstrating that the prison official was aware of an obvious, substantial risk to a prisoner's safety even if the official "did not know that the complainant was especially likely to be assaulted by the specific prisoner who eventually committed the assault." *Id*. at 843. It is well established that "a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the *risk* was obvious." *Id*. at 842 (emphasis added). Here, the complaint alleged facts that plausibly show that the risk of endocarditis or other life-threatening illness was indeed obvious. Ms. Kellum alleged Nurse Breen recognized Ms. Kellum was exhibiting severe, obvious, recognizable symptoms—prolonged high fever and chills, demonstrable breathing problems, nausea, low blood pressure, poor skin color, and inability to stand or walk—which Nurse Breen must have known required urgent medical attention and indicated a need for an ECG and other diagnostic testing to assess the reason for these symptoms.

Nurse Breen argues Ms. Kellum's allegations are wholly conclusory. It is true that conclusory allegations are insufficient to withstand a motion to dismiss. *See Khalik v. United Air Lines*, 671 F.3d 1188, 1193 (10th Cir. 2012) (stating that conclusory allegations in a complaint are "not entitled to the assumption of truth"). But we do not agree that Ms. Kellum's allegations are conclusory. The term

14

"conclusory" refers to the expression of "a factual inference without stating the underlying facts on which the inference is based." Black's Law Dictionary (10th ed. 2014). Here, Ms. Kellum included in her complaint the specific underlying factual allegations in support of her claim against Nurse Breen, including the specific medical symptoms and vital signs that she presented to Nurse Breen that indicated a need for further assessment, testing, diagnosis, and emergency medical treatment. It is from these factual allegations that a plausible inference of deliberate indifference can be drawn.

Accordingly, we conclude Ms. Kellum has stated a plausible claim upon which § 1983 relief may be granted, and that Nurse Breen was not entitled to judgment as a matter of law on the pleadings.

B. DENIAL OF MS. MARES'S MOTION FOR SUMMARY JUDGMENT

A prison official who serves solely "as a gatekeeper for other medical personnel capable of treating the condition may be held liable under the deliberate indifference standard if she delays or refuses to fulfill that gatekeeper role." *Self*, 439 F.3d at 1232 (internal quotation marks omitted). The district court concluded the evidence was sufficient to find Ms. Mares knew Ms. Kellum was seriously ill and needed immediate medical treatment and disregarded this obvious, substantial risk to her health by delaying her receipt of treatment for five hours, causing substantial harm by worsening Ms. Kellum's condition and causing her unnecessary pain and suffering.

15

On appeal, Ms. Mares challenges only the causation element of the objective component as it relates to delayed treatment; that is, whether the delay "resulted in" substantial harm. *Mata*, 427 F.3d at 751 (internal quotation marks omitted). She contends Ms. Kellum failed to present expert medical evidence that the five-hour delay caused a worsening of Ms. Kellum's condition. Mares Opening Br. at 2. She does not challenge the district court's determination there was sufficient evidence that the delay unnecessarily prolonged Ms. Kellum's pain and suffering, or that Ms. Mares had the culpable state of mind required to establish the subjective component of a deliberate indifference claim. Mares Opening Br. at 2.

When a prisoner claims that harm was caused by a delay in medical treatment, she satisfies the objective component by showing the delay resulted in substantial harm. *Mata*, 427 F.3d at 751. "[T]he 'substantial harm' caused by a delay in treatment may be a permanent physical injury, or it may be an intermediate injury, such as the pain experienced while waiting for treatment and analgesics." *Al–Turki*, 762 F.3d at 1193 (internal quotation marks omitted). The prisoner may show "substantial harm" by providing evidence that the delay "caused either unnecessary pain or a worsening of [the] condition." *Mata*, 427 F.3d at 755. "Even a brief delay may be unconstitutional." *Id*. Here, as noted above, the district court found Ms. Mares's delay in getting medical treatment for Ms. Kellum worsened her condition and caused her unnecessary pain.

Ms. Mares first asks this court to rule that "expert medical evidence is absolutely required to establish" that a public official's delay in treatment caused

16

substantial harm. Mares Opening Br. at 25. We have located no authority in this circuit absolutely requiring expert testimony to establish causation in an Eighth Amendment medical-treatment claim. Whether expert testimony is necessary to prove deliberate indifference to a serious medical need depends on the nature and complexity of the medical issues in a particular case and what other evidence is available in the record. *See, e.g.*, *Ortiz v. City of Chicago*, 656 F.3d 523, 534–35 (7th Cir. 2011) (citing cases that held non-expert evidence is sufficient in delay-of-medical-care cases as long as it permits the fact-finder to determine whether the delay caused additional harm; ruling expert not needed when obviously ill inmate dies after defendants failed to provide any medical care).

In any event, Ms. Kellum did present expert medical testimony. But Ms. Mares argues that the expert medical testimony is insufficient as a matter of law because it does not demonstrate that the worsening of Ms. Kellum's condition caused the need for open heart surgery, extensive medical treatment, hospitalization, rehabilitation, and lifetime monitoring. Mares Opening Br. at 27. She argues there is an evidentiary causation vacuum because it is possible, given the aggressive bacteria-replication rate, that Ms. Kellum "was already at the point of no return well before the afternoon/evening of October 24." *Id*. at 38.

The relevant question is whether the delay worsened Ms. Kellum's condition, not caused it, and the district court found the delay caused the substantial "intermediate harm[s]" of worsened infection and unnecessary pain. *See Mata*, 427 F.3d at 753 (holding the objective test can be met by the "intermediate harm,"

17

considering the symptoms "presented at the time the prison employee has contact with the prisoner" or by the resulting harm, when, for example, "delay by prison employees results in damage to a prisoner's heart" which "undoubtedly" is "sufficiently serious"). We are satisfied that the expert medical opinion regarding the bacteria-replication rate is sufficient to meet Ms. Kellum's summary judgment burden on worsened-condition causation. The district court found the experts' testimony, coupled with all reasonable inferences viewed in the light most favorable to Ms. Kellum, would permit a jury to conclude Ms. Mares's delay worsened Ms. Kellum's heart infection. We cannot question that reasonable-inference determination, as we "lack[ ] jurisdiction at this stage to review a district court's conclusions . . . that a plaintiff's evidence is sufficient to support a particular factual inference." *Fancher v. Barrientos*, 723 F.3d 1191, 1199 (10th Cir. 2013) (internal quotation marks omitted).

Lastly, Ms. Mares argues the district court's determination that a jury could reasonably infer from the expert testimony that Ms. Kellum's condition worsened based on the bacteria replication rate is "blatantly contradicted" by the record. "[W]hen the version of events the district court holds a reasonable jury could credit 'is blatantly contradicted by the record,' we may assess the case based on our own *de novo* view of which facts a reasonable jury could accept as true." *Lewis v. Tripp*, 604 F.3d 1221, 1225–26 (10th Cir. 2010) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)). Ms. Mares asserts Dr. Ross and another expert, Dr. DiCianno, testified they had no opinion as to whether the alleged acts or omissions of any BCMDC officials

18

caused or contributed to Ms. Kellum's medical outcome. We have reviewed the expert medical evidence, and conclude this deposition testimony does not blatantly contradict the evidence that the bacterium doubled every twenty minutes, or the inference the district court drew from that evidence that the delay worsened Ms. Kellum's condition.

Significantly, Ms. Mares does not dispute the district court's additional determination that there was sufficient evidence that the delay caused Ms. Kellum unnecessary pain and suffering. Evidence that delay caused substantial unnecessary pain and suffering is sufficient to establish the delay-caused-substantial-harm element. *See Al–Turki*, 762 F.3d at 1193 ("[W]hen the pain experienced during the delay is substantial, the prisoner sufficiently establishes the objective element of the deliberate indifference test." (internal quotation marks omitted)); *Sealock v. Colorado*, 218 F.3d 1205, 1210 n.5 (10th Cir. 2000) ("Although [defendant] did not cause [the prisoner's] heart attack, there is factual evidence from which a jury could conclude that the delay occasioned by his inaction unnecessarily prolonged [the prisoner's] pain and suffering."). Here, Ms. Kellum "exceeded the minimum evidentiary requirement . . . by presenting specific evidence that she suffered *both* unnecessary pain and a worsening in her condition." *Mata*, 427 F.3d at 755 (emphasis added).

We therefore conclude that Ms. Kellum met her summary-judgment burden to establish causation and the objective component of her Eighth Amendment claim against Ms. Mares.

19

## IV. CONCLUSION

The district court's orders denying Nurse Breen's motion for judgment on the pleadings and Ms. Mares's motion for summary judgment are affirmed.

Entered for the Court


Carolyn B. McHugh
Circuit Judge