**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

**December 11, 2023**

**Christopher M. Wolpert**
**Clerk of Court**

_____

ESTATE OF NATHAN TIMOTHY
SIMON, by and through its personal
representative Timothy Scott Simon;
TIMOTHY SCOTT SIMON, individually;
BERNADETTE MARY SIMON,
individually,

     Plaintiffs - Appellees,

v.

SHERIFF JAMES VAN BEEK, in his
official and individual capacities;
CAPTAIN GREGORY VAN WYK, in his
official and individual capacities;
UNDERSHERIFF MIKE MCWILLIAMS,
in his official and individual capacities;
DEPUTY SCOTT PETERSON; DEPUTY
DUSTIN OAKLEY,

     Defendants - Appellants,

and

EMT BERGON SHARP; EAGLE
COUNTY SHERIFF'S OFFICE; EAGLE
COUNTY DETENTION FACILITY;
EAGLE COUNTY BOARD OF
COMMISSIONERS; CORRECTIONAL
HEALTHCARE COMPANIES, LLC,
d/b/a Correct Care Solutions, LLC, d/b/a
Wellpath, LLC,

     Defendants.

No. 22-1389
(D.C. No. 1:21-CV-01923-CNS-GPG)
(D. Colo.)

_____

**ORDER AND JUDGMENT**[*]

_____

Before **TYMKOVICH**, **MATHESON**, and **CARSON**, Circuit Judges.

_____

Nathan Simon took his life after he was arrested and detained at the Eagle County Detention Facility ("ECDF") in Colorado. His estate brought individual capacity claims under 42 U.S.C. § 1983 against the officers who arrested him—Eagle County Sheriff's Deputies Scott Peterson and Dustin Oakley—and three jail supervisors—Sheriff James Van Beek, Captain Gregory Van Wyk, and Undersheriff Mike McWilliams (collectively, "Defendants").

The Defendants moved to dismiss the claims based on qualified immunity. The district court denied the motion, holding the amended complaint sufficiently alleged that the Defendants violated Mr. Simon's clearly established due process rights under the Fourteenth Amendment through their deliberate indifference to the substantial risk he would commit suicide.

Exercising jurisdiction over this interlocutory appeal under 28 U.S.C. § 1291, we reverse and remand to the district court.

_____

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## I.  BACKGROUND

### A. *Factual Allegations*

On August 3, 2019, Mr. Simon was arrested for an alleged bond violation. Two days later, he hanged himself from the inside window bars of his cell using a bedsheet.  The following presents the facts as alleged in the amended complaint.

### 1.  Early Contacts with the ECSO and ECDF

In April 2019, Karlie Cummins, Mr. Simon's girlfriend, made an emergency call to report her concern that Mr. Simon would commit suicide.  Eagle County Sheriff's Office ("ECSO") employees responded, but Mr. Simon convinced them he was not suicidal.  In June, Ms. Cummins emailed ECSO Deputy Ivette Rosales, explaining that Mr. Simon "was demonstrating suicidal behavior," including "extreme depression" and speaking "of suicide and giving up."  App., Vol. II at 268. She also wrote that Mr. Simon "will lie to cover things up."  *Id.*

Later that month, Mr. Simon's mother called the ECSO to report he was "threatening suicide" and had done so before.  *Id.* at 269.  Two ECSO deputies responded.  Mr. Simon's parents told them Mr. Simon was suicidal.  Mr. Simon denied he was suicidal but explained he was "in a bad way" and "[his] whole life [was] falling apart."  *Id.*  The deputies recommended that the Simons contact the Hope Center and watch Mr. Simon through the night.  One of the deputies told the Hope Center that Mr. Simon's "parents [were] currently worried that he [was] suicidal."  *Id.*

2. **Events Immediately Preceding Mr. Simon's Suicide**

On August 2, Defendant Deputy Peterson, Deputy Andrew Teichman, and an ECSO detective arrested Mr. Simon and took him into custody at the ECDF. Deputy Teichman reported that Mr. Simon was "shaking and unusually nervous." *Id.*

Mr. Simon bonded out of the ECDF the next morning and returned to his parents' residence. He told them "he [was] going to kill himself." *Id.* His mother called 911, which connected her to the ECSO dispatch. She reported that her "son [wa]s threatening suicide" and "ha[d] a history of mental illness." *Id.* She told the dispatcher she was concerned he might "jump in the river." *Id.* Mr. Simon "abruptly fled [his parents'] residence." *Id.* Dispatch broadcast an alert for a "[s]uicidal [p]arty." *Id.*

Deputy Peterson and another deputy responded to the Simons' residence. "Both parents directly told the deputies that [Mr. Simon] was suicidal and specifically not to believe him if he denied it." *Id.* at 270. Later that day, Deputy Peterson and Defendant Deputy Oakley apprehended, detained, and interrogated Mr. Simon. They then placed him under arrest for an alleged bond violation. At an unspecified point, Mr. Simon's parents also "expressly told [Deputy Oakley] that [Mr. Simon] would deny [being suicidal] and not to believe him." *Id.*

Deputy Oakley transported Mr. Simon to the ECDF and spoke with him "about his suicidal actions." *Id.* Deputy Oakley asked what Mr. Simon had done "to make [his] parents think [he was] gonna go commit suicide." *Id.* Mr. Simon "responded

4

that he was having a hard time with a lot of personal issues . . . and that he did not feel like going through the details" and began crying. *Id.*

Meanwhile, Deputy Peterson returned to the Simons' residence and told Mr. Simon's parents "he did not consider [Mr. Simon] to be suicidal." *Id.* Mr. Simon's parents again told Deputy Peterson that Mr. Simon "was in fact suicidal and not to believe [him] if he said he was not suicidal." *Id.*

### 3. Intake and State District Court Referral

Mr. Simon was booked into the ECDF as a pretrial detainee and underwent a mental health screening. The intake form used for the screening asked whether the "[a]rresting or transporting officer believe[d] subject may be a suicide risk," and the intake employee checked "NO." *Id.* at 271. "[N]one of the information regarding [Mr.] Simon's suicidal behavior on August 3 . . . [was] communicated to the ECDF intake personnel by [Deputies Peterson and Oakley]." *Id.* Mr. Simon was then "placed . . . in the general population in a single cell . . . with no suicide-prevention precautions." *Id.* at 272. The cell had "high bars on the inside of a high window," and surveillance cameras could not monitor activity in the cell. *Id.* He was provided with bedsheets and a towel.

On August 5, Mr. Simon attended a court advisement hearing in state district court. During the hearing, the judge said, "The police were called as a result of . . . people's concern over [Mr. Simon's] safety." *Id.* at 273. She referred Mr. Simon to the Bridges Program for a mental health assessment. The referral was emailed to the ECSO and ECDF.

4. **Suicide and Sheriff's Statement**

Later, after the August 5 hearing, Mr. Simon hanged himself in his cell with a bedsheet. A month after his death, Sheriff Van Beek published a statement that read, "There has been a rise in suicides across Eagle County, and we were shocked when two occurred in our jail this month." *Id.*

B. *District Court Proceedings*

Mr. Simon's estate sued the arresting officers and supervisors in their individual capacities under 42 U.S.C. § 1983,[1] alleging a violation of the Fourteenth Amendment through deliberate indifference to Mr. Simon's substantial risk of

---

[1] The caption of the amended complaint lists as defendants: "SHERIFF JAMES VAN BEEK, in his official and individual capacities; CAPTAIN GREGORY VAN WYK, in his official and individual capacities; UNDERSHERIFF MIKE MCWILLIAMS, in his official and individual capacity, DEPUTY SCOTT PETERSON, [and] DEPUTY DUSTIN OAKLEY." App., Vol. II at 260. But the counts alleging § 1983 claims against the Defendants—Counts I, III, V, VII, and VIII—list each as sued only "in his Official Capacity." *Id.* at 274, 279, 282, 285, 288.

On its face, the pleading suggests that none of the Defendants were sued in their individual capacities. And the district court described the § 1983 claims as claiming a "violation of the Fourteenth Amendment through 42 U.S.C. § 1983 against Defendants Van Beek, McWilliams, Van Wyk, Peterson [and] Oakley . . . in their official capacities." *Id.* at 432.

Nonetheless, the district court addressed qualified immunity for individual capacity claims against Deputies Peterson and Oakley and individual supervisory liability claims against Sheriff Van Beek, Captain Van Wyk, and Undersheriff McWilliams. *Id.* at 433-40. This approach was consistent with the parties' briefing on the motion to dismiss. *Id.* at 309-16. The Defendants have not argued in district court or here that they were sued only in their official capacities.

6

suicide.[2]  The Defendants moved to dismiss under Federal Rule of Civil Procedure 12(b)(6), asserting qualified immunity.  The district court denied the motion.

The court denied qualified immunity to arresting officers Peterson and Oakley, concluding the Estate adequately alleged the officers had violated Mr. Simon's clearly established constitutional right.  It held that the amended complaint "alleged sufficient facts to show that the [arresting officers] were aware of the risk that [Mr. Simon] would commit suicide" and "acted with deliberate indifference to [Mr. Simon]'s serious medical needs." *Id.* at 437-38.  And the court held the officers violated clearly established law under *Cox v. Glanz*, 800 F.3d 1231 (10th Cir. 2015).

The district court also denied the supervisors' assertion of qualified immunity, holding the Estate sufficiently alleged an "affirmative link between the supervisor[s] and the constitutional violation." App., Vol. II at 438-39.  It did not address whether the supervisors violated clearly established law.

The Defendants brought a timely interlocutory appeal to challenge the denial of qualified immunity.

---

[2] The Estate and Mr. Simon's parents alleged additional claims that are not relevant to this appeal.

## II. DISCUSSION

### A. *Legal Background*

#### 1. Standard of Review

We apply de novo review to a district court's denial of a motion to dismiss based on qualified immunity. *Brown v. Montoya*, 662 F.3d 1152, 1162 (10th Cir. 2011); *see Thompson v. Ragland*, 23 F.4th 1252, 1255 (10th Cir. 2022). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted).

"We accept all well-pleaded factual allegations in the complaint as true, and we view them in the light most favorable to the nonmoving party." *Sinclair Wyo. Refin. Co. v. A & B Builders, Ltd.*, 989 F.3d 747, 765 (10th Cir. 2021) (alterations and quotations omitted). "In the context of a § 1983 action against multiple individual governmental actors, it is particularly important that the complaint make clear exactly who is alleged to have done what to whom, to provide each individual with fair notice as to the basis of the claims against him or her." *Truman v. Orem City*, 1 F.4th 1227, 1235 (10th Cir. 2021) (alterations and quotations omitted).

#### 2. Section 1983 and Qualified Immunity

Section 1983 provides that a person acting under color of state law who "subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." 42 U.S.C. § 1983.

"Persons sued under § 1983 in their individual capacity may invoke the defense of qualified immunity." *Duda v. Elder*, 7 F.4th 899, 909 (10th Cir. 2021). "[Q]ualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights . . . ." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quotations omitted).

"A motion to dismiss based on qualified immunity imposes the burden on the plaintiff to show both [1] that a constitutional violation occurred and [2] that the constitutional right was clearly established at the time of the alleged violation." *Doe v. Woodard*, 912 F.3d. 1278, 1289 (10th Cir. 2019) (quotations omitted). We may decide "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson*, 555 U.S. at 236; *see Cox*, 800 F.3d at 1246.

"A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (per curiam) (quotations omitted). "A Supreme Court or Tenth Circuit decision on point or the weight of authority from other courts can clearly establish a right . . . ." *A.N. ex rel. Ponder v. Syling*, 928 F.3d 1191, 1197 (10th Cir. 2019) (quotations omitted). "[A] case directly on point" is not necessary if "existing precedent . . . ha[s] placed the statutory or constitutional question beyond debate." *White v. Pauly*, 580 U.S. 73, 79 (2017) (per curiam) (quotations omitted).

3. **Deliberate Indifference**

"A prison official's deliberate indifference to an inmate's serious medical needs violates the Eighth Amendment." *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000); *see also Farmer v. Brennan*, 511 U.S. 825, 828 (1994). The deliberate indifference standard applies to pretrial detainees like Mr. Simon through the Fourteenth Amendment. *Burke v. Regalado*, 935 F.3d 960, 991 (10th Cir. 2019). We assess claims involving jail suicide for deliberate indifference to serious medical needs. *Est. of Burgaz ex rel. Zommer v. Bd. of Cnty. Comm'rs for Jefferson Cnty.*, 30 F.4th 1181, 1186 (10th Cir. 2022).

"Deliberate indifference involves both an objective and a subjective component." *Sealock*, 218 F.3d at 1209 (quotations omitted). "The objective component is met if the deprivation is 'sufficiently serious.'" *Id.* (quoting *Farmer*, 511 U.S. at 834). "Death by suicide satisfies that requirement." *Est. of Burgaz*, 30 F.4th at 1186; *see Cox*, 800 F.3d at 1240 n.3.

"The subjective component is satisfied if a prison official knows of *and* disregards an excessive risk to inmate health or safety . . . ." *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005) (emphasis added) (quoting *Farmer*, 511 U.S. at 837). As to knowledge, "[t]he official must be aware of the facts from which the inference of a substantial risk of serious harm could be drawn and also draw that inference." *Lucas v. Turn Key Health Clinics, LLC*, 58 F.4th 1127, 1137 (10th Cir. 2023). Thus, the official must have "actual knowledge . . . of an individual inmate's substantial risk of

suicide." *Cox*, 800 F.3d at 1249. A factfinder may infer knowledge if "the risk was obvious." *Farmer*, 511 U.S. at 842.

## B. *Analysis*

We address in two parts whether the district court erred in denying qualified immunity to the Defendants.

First, we hold the district court should have dismissed the § 1983 claims against the arresting officers on prong two of qualified immunity. Even assuming Deputies Peterson and Oakley were deliberately indifferent in violation of the Fourteenth Amendment, the Estate has not shown the law was clearly established.

Second, we hold the district court should have dismissed the § 1983 claims against the supervisors on prong one of qualified immunity. The amended complaint does not plausibly allege the supervisors had actual knowledge of Mr. Simon's substantial risk of suicide.

## 1. **Arresting Officers**

Even if the Estate sufficiently alleged the arresting officers were deliberately indifferent to Mr. Simon's substantial risk of suicide, it has not shown that the law was clearly established at the time of the alleged constitutional violation.

The Estate primarily relies on *Cox* for its prong-two clearly established law argument, but this reliance is misplaced. In *Cox*, also a jail-suicide case, the decedent's mother sued Sheriff Stanley Glanz in his individual and official capacities under § 1983. 800 F.3d at 1236. She "alleg[ed] that his failure to provide adequate and timely mental-health screening and care" at the intake and placement stage of

11

detention "constituted deliberate indifference to [the decedent]'s serious medical needs." *Id.* at 1239. We reversed the district court's summary judgment decision denying qualified immunity on the individual capacity claim because the law would not have put Sheriff Glanz on notice that he could be held liable for the decedent's suicide. *Id.* at 1236. *Cox* does not provide clearly established law here for two reasons.

First, because we decided *Cox* on the second prong of qualified immunity, holding the law was not clearly established without deciding the underlying constitutional issue, it provides no precedent for clearly established law. *See George ex rel. Bradshaw v. Beaver County ex rel. Beaver Cnty. Bd. of Comm'rs*, 32 F.4th 1259 (10th Cir. 2022). We recently made this point in *George*, another pretrial detainee suicide case. *Id.* at 1246. The § 1983 claim in *George* alleged a defendant jail official "violated [the decedent]'s constitutional rights by placing [him] in a regular cell and failing to inform other officers of his suicide risk." *Id.* at 1258. We held that no "Tenth Circuit or Supreme Court decision put [the official] on notice that his conduct violated [the decedent]'s constitutional rights." *Id.* at 1259.

We explained that *Cox* "assumed the existence of a constitutional violation and held that the right at issue—'an inmate's right to proper prison suicide screening procedures during booking'—wasn't clearly established." *Id.* (quoting *Perry v. Durborow*, 892 F.3d 1116, 1124 (10th Cir. 2018) (quoting *Cox*, 800 F.3d at 1247)). Because *Cox* did not decide whether there was a prong-one constitutional violation, it did not clearly establish jail officials' liability in those circumstances.

12

Second, the circumstances in *Cox* differed significantly from those in this case. Unlike Deputies Peterson and Oakley, Sheriff Glanz was sued in his individual supervisory capacity. *See Cox*, 800 F.3d at 1236. "We specifically base[d] our decision . . . on our determination . . . that the then-extant clearly established law would not have put a jail administrator similarly situated to Sheriff Glanz on notice that he could be held liable under § 1983 for an Eighth Amendment violation based on a prisoner's suicide . . . ." *Id.* Deputies Peterson and Oakley are not supervisors or jail administrators.

And in *Cox*, the alleged deliberate indifference occurred when the decedent was booked into the jail, screened for placement in the general population, and received no response to a request for medical assistance. *Id.* at 1237-39. The Estate has not cited any cases in which arresting officers have been held liable under § 1983 for a jail suicide that occurred after they transported the arrestee to the jail and turned over custody to jail staff for screening and placement.

In addition to *Cox*, the district court cited *George* and *Crane v. Utah Department of Corrections*, 15 F.4th 1296 (10th Cir. 2021), as clearly establishing the law in this case. Even if *George* or *Crane* were factually analogous to this case, both were decided after Mr. Simon's suicide occurred in 2019. For qualified immunity, the right must be "clearly established at the time of the defendant's alleged misconduct." *Pearson*, 555 U.S. at 232 (quotations omitted). While "a case decided after the [underlying] incident . . . can state clearly established law when [it] ruled that the relevant law was clearly established as of an earlier date preceding the

13

[underlying] events," *Wilkins v. City of Tulsa*, 33 F.4th 1265, 1276 n.8 (10th Cir. 2022) (quotations omitted), neither *George* nor *Crane* did so.

In sum, even assuming the amended complaint adequately alleged that Deputies Peterson and Oakley violated Mr. Simon's constitutional right, the Estate has not shown that the right was clearly established at the time of the violation.  We therefore reverse the denial of qualified immunity to Deputies Peterson and Oakley.

2. **Supervisors**

The Estate did not sufficiently allege that any of the supervisors had actual knowledge of Mr. Simon's risk of suicide, which is required for supervisory liability under a § 1983 jail-suicide claim.  We therefore reverse the district court's denial of qualified immunity because the Estate failed to allege a constitutional violation.[3]

a. *Additional legal background*

"A § 1983 defendant sued in an individual capacity may be subject to personal liability and/or supervisory liability." *Brown*, 662 F.3d at 1163.  Supervisors are not vicariously liable for their employees' acts under § 1983, but a supervisor may be liable for "*personally* violat[ing] [a plaintiff's] constitutional rights." *Perry*, 892 F.3d at 1121.

---

[3] The Estate also brought a municipal liability claim against the supervisors by suing them in their official capacities.  *See Monell v. Dep't of Soc. Servs. of the City of N.Y.*, 436 U.S. 658, 690 (1978).  The supervisors moved to dismiss this claim, but the district court found it was adequately alleged.  The *Monell* claim is not part of this appeal.

To establish supervisory liability, a plaintiff must "show an affirmative link between" a supervisor and the alleged constitutional injury. *Id.* (quotations omitted). The "plaintiff must prove: (1) the defendant promulgated, created, implemented or possessed responsibility for the continued operation of a policy that (2) caused the complained of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional deprivation." *George*, 32 F.4th at 1255 (quotations omitted).

"Precisely what state of mind is required for individual liability depends on the type of claim a plaintiff brings." *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 769 (10th Cir. 2013). The state of mind to establish "§ 1983 jail-suicide supervisory[ ]liability" is knowledge "that the specific inmate at issue presented a substantial risk of suicide." *George*, 32 F.4th at 1257 (citing *Cox*, 800 F.3d at 1250; *Crane*, 14 F.4th at 1307); *see Est. of Hocker ex rel. Hocker v. Walsh*, 22 F.3d 995, 1000 (10th Cir. 1994).

b. *Application*

The Estate does not allege facts showing that any of the supervisors had "actual knowledge . . . of an individual inmate's substantial risk of suicide," *Cox*, 800 F.3d at 1249, or that "the risk was obvious," *Farmer*, 511 U.S. at 842. It alleges that information about Mr. Simon was communicated to ECSO and ECDF employees who are not parties to this suit. But it does not allege that this information was shared with the supervisors or was generally known. Nor did it allege that the supervisors were made aware of Deputy Peterson's or Deputy Oakley's interactions with

15

Mr. Simon. *See Mata*, 427 F.3d at 751 ("[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and she must also draw the inference." (alterations and quotations omitted)).

The district court inferred that the supervisors had actual knowledge of Mr. Simon's risk of suicide from the allegation that the judge's August 5 referral of Mr. Simon to the Bridges Program for a mental health assessment was emailed to the ECSO and ECDF. But the Estate did not allege that any of the supervisors monitored the email address or that they were informed about the email. And the referral does not mention suicide, nor does the Estate allege that it does. App., Vol. II at 327-28; *see Cox*, 800 F.3d at 1252-53 (finding a defendant who was informed that a patient had paranoid schizophrenia "had *no* knowledge that [he] presented a substantial risk of suicide").

The district court also relied on Sheriff Van Beek's post-incident statement that the ECDF had two suicides during the month of Mr. Simon's death. But a statement made one month after Mr. Simon's suicide does not show any of the supervisors' knowledge before his suicide.

In sum, the Estate failed to allege a constitutional violation against the supervisors. The district court erred in denying qualified immunity.[4] We do not need to address whether the law was clearly established. *See Pearson*, 555 U.S. at 236.

---

[4] The district court erred not only in concluding the amended complaint alleged a constitutional violation against the supervisors, but it also erred in failing to address the clearly established law prong of qualified immunity.

## III. **CONCLUSION**

We reverse the district court's denial of the motion to dismiss based on qualified immunity.

Entered for the Court

Scott M. Matheson, Jr.
Circuit Judge